JOHNSTONE *v.* ROBINSON and others.

(*Circuit Court, D. Colorado.* October, 1881.)

1. MINES—"GRUB STAKE"—ARRANGEMENT MUST EXIST AT TIME OF DISCOVERY TO CREATE JOINT INTEREST.

The partnership relation or association between parties who may be engaged in prosecuting explorations in the public lands for mines, must exist at the time of the alleged discovery and location, in order to give to the parties associated an interest in the property. If it does not then exist, so that the person acting in the field, making the discovery and the location, can be said to be acting for the others as well as himself, no interest can be acquired by those who are not personally present.

2. SAME—ABANDONMENT OF CONTRACT—FORMING NEW AGREEMENT.

Where several persons associate themselves together, by agreement, to go out and discover mines, and some of them furnish the means of prosecuting the enterprise, as provisions and tools and the like, and others go out and contribute their labor, and each party performs his part of the agreement according to its terms, the conduct and declarations of the parties show that they are acting in fulfillment of their contract; but when this contract is apparently abandoned, and some new arrangement is made between new parties, and means are furnished by some of them, as arranged in the first instance, and others go out in the prosecution of the joint enterprise, it would be plain that they were acting under and in pursuance of the last agreement, and not the first, and the parties to the first agreement would acquire no interest in the mines discovered.

In Equity.

*Wells, Smith & Macon,* for plaintiffs.

*G. G. Symes,* for defendants.

HALLETT, J., (*orally.*) Sarah E. Johnstone, a married woman, and Mary A. and Ellen W., her infant children, filed a bill in the district court of Arapahoe county against the unknown heirs of Charles Jones, to compel the conveyance of certain interests in mining property in the county of Summit. Afterwards George B. Robinson and the Robinson Consolidated Mining Company, who had acquired Jones' interest in the property, were made parties to the suit.

On the death of Robinson, his heirs, and perhaps his personal representatives, were substituted for him as defendants, and the bill is now pending against those parties.

The theory of the case, as advanced in the bill, is that Mr. Jones, having been engaged with Mrs. Johnstone's husband in the San Juan country, in the year 1877, in prospecting for mines, agreed with Mrs. Johnstone that if he should be brought out to Denver by her or her husband, and kept here during the ensuing winter, and furnished with an outfit for prospecting in the spring, that he would give to her and her children one-half the property which he should acquire during the summer, or that they should be interested with him in some partnership relation to the extent of one-half of what he should acquire during the summer.

It is alleged in the amended bill that all these things were done; that is to say, that Jones was brought to Denver and kept during the winter, and furnished with the necessary outfit in the spring, and in the course of the summer that he acquired the property in which the plaintiffs claim to have an interest, and which they wish to have decreed to them in this suit.

There is some evidence to show that Jones was brought to Denver pursuant to the agreement, and kept here during the winter by Mr. Johnstone. It may be assumed that the fact is proved, and as to furnishing him with an outfit in the spring, there is testimony that some money was given to him at the time when he was about to start to Leadville, the amount of which is not shown; also some blankets and perhaps some clothing. It is not claimed that anything more was furnished him—provisions, or tools, or animals, if any were necessary. As to that matter, then, it may be said that the proof is not full; does not establish a compliance by the plaintiff Mrs. Johnstone, or her husband, with the agreement.

Jones went on to Leadville, and there, after something of a spree, and idling around for some time, and making similar arrangements as to prospecting with at least two other parties, he went out in the interest of Mr. Robinson, or parties who were associated with Robinson, he himself being one of them, in an effort to discover mines. The mines in controversy here were discovered some time during the summer, Jones having in the discovery, by the terms of the agreement with Robinson and others, an interest of one-fourth, or something like that, in the locations so made.

It is to secure one-half of that interest so acquired by Jones under an agreement with these other parties, not with the plaintiffs in this

suit or any of them, but with other parties, that this suit is prosecuted. Jones died in the autumn of that year, and the bill was brought against his unknown heirs, these other parties becoming defendants afterwards.

Upon this statement of facts I deem it only necessary to say that, in my view, the partnership relation, or—if it be not called a partnership relation, but by some other name—the association between parties who may be engaged in prosecuting explorations in the public lands for mines, must exist at the time of the alleged discovery and location, in order to give to the parties associated an interest in the property. If it does not then exist, so that the person acting in the field, making the discovery and the location, can be said to be acting for the others as well as himself, no interest can be acquired by those who are not personally present. Complainants' counsel seem to have felt the force of that rule, and they sought to establish the existence of this relation by Jones' admissions, made by him at different times through the year, to the effect that he expected to give some interest to Mrs. Johnstone and her children, or that they held some interest as discoverers. But that, I think, is not sufficient. Conceding that such admissions may have been made,—and I think the evidence establishes that they were made,—that is not sufficient to overcome the strong circumstances of the case. Mr. Jones had agreed with other parties, whose names I do not now recall, to go upon a prospecting expedition for them, or to allow them to stand in interest with him. He was a man of dissipation, and, as shown by the evidence here, in the habit of drinking about all the time when he could find anything to drink that would produce drunkenness, and for that reason I should say that not very much importance is to be attached to his statements.

But if we should give the greatest weight to them,—the weight that would be attached to the declarations of a sober man, of deliberate ways and habits of mind,—I doubt whether it could be said that one having made one arrangement or agreement with certain parties to act with them in securing mines, and afterwards making another agreement with other parties, and going apparently in pursuance of the last agreement, with the means furnished by his latest associates, could be said to be acting under and in pursuance of the first agreement. I do not believe that inference would be a fair one. If several persons associate themselves together by agreement to go out and discover mines, and some of them furnish the means of prosecuting the enterprise, as provisions and tools, and the like, and others

go out and contribute their labor, and each party performs his part of the agreement according to its terms, it is clear enough, from the conduct of the parties, as well as their declarations, that they are acting in fulfillment of their contract and agreement, whatever it may be; but when this agreement is apparently abandoned, and some new arrangement is made between new parties, and means are furnished by some of them, as arranged in the first instance, and others go out in the prosecution of the joint enterprise, any one would say, upon that circumstance alone, that they are acting under and in pursuance of the last agreement, and not the first. And that is the situation of affairs here. I do not think that it is open to discussion, even, that Mr. Jones, at the time he made these discoveries, was acting under his arrangement with Mrs. Johnstone. He had abandoned that, as he abandoned everything else, apparently, within a day or two after it was made, and taken up with this new idea, with the people who came to him last, and furnished the necessary articles for prosecuting his enterprise. His acquisitions during this time, as he got only a small interest in the property, must be taken to have been made for himself, and these plaintiffs were not interested in them at all; and whatever remedy they would have against him or his representatives for his breach of contract, they would have no right whatever to the property which he might acquire when acting under this new arrangement, this new agreement, with Robinson and his associates.

That is the strong reason in my mind which will enforce a decree for the defendants in this case.

The bill was dismissed, and the defendants will recover.