### MOORE et al. v. HAMMOND et al.

(Circuit Court of Appeals, Ninth Circuit. February 24, 1903.)

No. 817.

1. EQUITY—SUFFICIENCY OF BILL—GROUNDS FOR RELIEF.

A bill alleged that complainants and S. agreed verbally to co-operate in a scheme to secure the building of a railroad and to obtain subsidies therefor, the profits to be divided; that S., acting for all, as defendant knew, made a written contract with defendant by which defendant was to secure a contract for the subsidies, and undertake to build the road, and S. was to procure the necessary money by a short loan until the road was built, and its securities could be marketed, paying such commissions for the loan as should be agreed on, the profits of the enterprise to be divided between S. and defendant, but, if either failed to carry out his part of the contract, he was to have no share in the profits. It was then alleged that S. failed to obtain the money because defendant refused to agree on the commission to be paid, but no facts were stated showing that S. procured any one able and willing to lend the money at any rate of commission. It was further alleged that defendant obtained the money, built the road, and secured thereby property of large value, donated as subsidies, to recover an interest in which com-

plainant sued. *Held,* that the bill stated no cause of action against defendant, since it affirmatively appeared therefrom that S. never became entitled to any share of the profits under the terms of his contract with defendant.

2. CONTRACTS—PARTIES—RIGHT TO SUE.
   A bill alleged that S., on behalf of himself and complainants, entered into a contract with defendant by which they agreed to jointly prosecute a certain enterprise and divide the profits; that defendant knew of complainant's interest in the contract; that the enterprise was carried out, and large profits realized, which were divided between defendant and S. in fraud of complainant's rights. *Held,* that the contract pleaded created no contractual relation between complainants and defendant which would support a suit; the remedy of complainants, if any, being against S.

Appeal from the Circuit Court of the United States for the District of Oregon.

For opinion on demurrer to bill, see 110 Fed. 897.

George A. Brodie and Emmons & Emmons, for appellants.
C. W. Fulton, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The court below sustained a demurrer to the amended bill of complaint, and thereafter dismissed it at the complainants' cost. The appeal therefore presents only the question of the sufficiency of the bill. It was brought against Hammond, one John C. Stanton, and a corporation called the Astoria Company. It alleges that in the month of April, 1894, Stanton, who was never served with process, never appeared in the suit, and was subsequently dismissed therefrom on the motion of the complainants, entered into a parol agreement with one Campbell and the complainants to the effect that they should unite their efforts to secure the right of way, together with certain bonuses and subsidies, for building and equipping a line of railroad from the city of Astoria along the south shore of the Columbia river, in the state of Oregon, to a railroad station called "Goble," on the Northern Pacific Railroad, in Columbia county, of that state, secure the necessary money for and build and equip, or procure other parties to build and equip, the same; that each of the parties should devote such of their time and attention to the matter as should be thought desirable; that each should pay his own expenses, and that the profit that might be derived from such operations should be divided, one-third to Stanton, one-third to Campbell, and one-third to the complainants jointly; that no contract should be entered into without the concurrence of all of those parties, and that any contracts made should be made in the name of such party or parties as might be agreed upon, and, if not made in the names of all the parties, then the party or parties receiving the contract should execute a suitable declaration of trust showing the rights of all of the parties to the agreement stated.

It is alleged that each of the four persons named expended considerable time and money in prosecuting their enterprise and in discussing various plans, and that on the 30th day of November, 1894, Stanton, acting under the above-mentioned contract, and for the

benefit of himself, Campbell, and the complainants, entered into the following contract:

"Memorandum of Agreement, made this 30th day of November, A. D. 1894, by and between Ed I. Bonner and A. B. Hammond of Missoula, State of Montana, hereinafter called the party of the first part, and J. C. Stanton, of New York City, and H. I. Kimball, of Atlanta, State of Georgia, hereinafter called the party of the second part, witnesseth:

"That whereas certain parties in Astoria, Oregon, own a railway now in operation from the west side of Young's Bay southerly along the Pacific Coast some sixteen miles, and known as the Seaside Railway Company—which said company also own and control the grant from the United States Government to build a drawbridge across said Young's Bay, and

"Whereas, the citizens of Astoria have donated certain lands and other property, and placed the same in the hands of the Astoria Savings Bank Trustees, to be used as a subsidy under the control and direction of a committee of twenty-one named by them for the building of the Columbia River and Astoria Railway, from Astoria to a connection with the Northern Pacific R. R. at Goble; and

"Whereas, the party of the first part is willing to enter into contract with the owners of the said Seaside Railway for its road and franchise, including the grant for the said drawbridge from the U. S. Government, also to enter into contract with the committee controlling said subsidy—for the construction of said Columbia River and Astoria Railway, which said contracts are to have the approval of the party of the second part; and

"Whereas, the said party of the second part has heretofore had preliminary negotiations with parties who are to undertake to furnish the money necessary to buy said Seaside Railway, also to build said Columbia River & Astoria Railway—and is confident of their ability to secure such money:

"Now, therefore, in consideration of one dollar in hand paid each to the other—the receipt of which is hereby acknowledged, agree as follows, to wit:

"First. It is mutually agreed that all parties hereto shall unite their influence in securing for the party of the first part the most favorable contract with the said Seaside Railway Company and with the said Subsidy Committee.

"Second. The said party of the first part hereby agreed to enter into contract with the said Seaside Railway Company for the purchase of its railway and franchise, also to enter into contract with the said Subsidy Committee for the building of the said Columbia River and Astoria Railway, upon the best terms obtainable.

"Third. The said party of the second part hereby undertakes to finance the entire enterprise and secure the funds required for the purchase of the said Seaside Railway and its franchises, and for the construction of the said Columbia River & Astoria Railway—in accordance with the proposed contracts with said parties, and the party of the first part. It being mutually understood that the plan of raising such money suggested by the said party of the second part, viz., of borrowing the full amount required for an average term of about two years at 6 per cent. per annum interest—and the payment of such commission as may be agreed upon between the lenders and all the parties hereto—and pledging as security for such loan, all of the subsidies which may be procured—also all of the securities, stock and bonds which may be issued upon said properties, is accepted.

"Fourth. It is hereby mutually agreed that all of the parties hereto shall work to secure additional subsidies, this having special reference to the property on the west side of the Astoria harbor—and that in every department of the work herein contemplated by either party there should be mutual conference and co-operation.

"Fifth. It is hereby further mutually agreed that in case it should be found desirable to interest other parties in this enterprise that it may be done upon the mutual consent of the parties hereto, and whatever interest in the enterprise it is found necessary to part with for such purpose should be deducted from the whole, each of the parties hereto surrendering its pro rata share.

"Sixth. It is hereby further mutually agreed that the parties hereto shall

work in good faith, each aiding the others whenever possible—and that in all contracts and in all property or profits the interest of each party shall be as follows, viz.:

"⁵/₉ to the parties of the first part, and ⁴/₉ to the parties of the second part.

"Seventh. It is hereby further mutually agreed and understood that in case the said party of the first part fails to secure the contracts herein referred to, that they will surrender all claims and not be entitled to any interest therein—and in case the party of the second part fails to secure the money to carry out said contracts, as contemplated, and that burden falls upon the party of the first part, the said party of the first part shall not in such case be bound to divide any of the profits of the enterprise with the said parties of the second part.

"In witness whereof the said parties have hereunto affixed their hands and seals at Portland, Oregon, the day and year first above written in quadruplicate.                                Edward I. Bonner,

"By A. B. Hammond.      [Seal.]
"A. B. Hammond.          [Seal.]
"J. O. Stanton.           [Seal.]
"H. I. Kimball.           [Seal.]"

It is alleged that at the time of the making of the contract of November 30, 1894, Hammond, Bonner, and Kimball knew that the complainants and Campbell were interested with Stanton therein, and that Stanton subsequently reported the same to the complainants and Campbell, and notified them that he had taken the contract in the names of Kimball and himself, but for the use and benefit of Kimball, himself, Campbell, and the complainants, and that it was thereupon further agreed between the complainants, Stanton, and Campbell "that from thenceforth they would work together in furtherance of the objects" of the contract of November 30, 1894, and that Stanton, Campbell, and the complainants' interests "therein and thereunder should be the same as theretofore agreed upon under said verbal agreement, to wit, one-third to said complainants, one-third to said Stanton, and one-third to said Campbell." It is alleged that Kimball, Stanton, Campbell, and Hammond, "in pursuance of the contract, did unite their influence in securing for said Hammond and said Bonner the most favorable contracts, as contemplated" by that of November 30, 1894, both with the Seaside Railway Company and with the subsidy committee therein mentioned; that thereafter, and about December 1, 1894, Hammond, acting for himself and Bonner, in pursuance of the contract of November 30, 1894, entered into a contract with certain persons therein described as the "committee of direction" and the Astoria Savings Bank, a corporation, by which Hammond and Bonner undertook to build the railroad described for certain subsidies, by the terms of which contract the actual work of construction of the railroad was required to be commenced on or before the 1st day of April, 1895, and that at least $100,000 should be expended in such construction on or before July 1, 1895, which road should be completed and ready for operation on or before the 30th day of October, 1896. It is alleged that Stanton, Kimball, Campbell, and the complainants proceeded in good faith, with the knowledge and approval of Hammond and Bonner, to perform the conditions and agreements required by the contract of November 30, 1894, on the part of Stanton and Kimball, "and particularly to secure

additional subsidies and the necessary money with which to build" the road, and that they did secure, or aided in securing, certain additional subsidies, especially with reference to real property on the west side of the Astoria Harbor, of the value of $500,000. It is alleged that Hammond acted for both Bonner and himself, and that for a time he co-operated with Kimball, Campbell, and the complainants, especially in the matter of securing the additional subsidies, and for a time pretended to co-operate with them for the purpose of securing the necessary money with which to build the road, but "that said Hammond and Bonner never acted in good faith in trying to secure said necessary money, and did not in fact try to secure said necessary money, or aid in securing the same, nor did said Hammond proceed in good faith to the performance of any act in aid of the said Stanton, Kimball, Campbell, and the complainants in procuring said necessary money." It is alleged that Stanton, Kimball, Campbell, and the complainants did a large amount of work in furtherance of the contract of November 30, 1894; that Hammond "refused to state what commissions he was willing to pay or should be paid in securing said money, and refused to work" with the complainants, Stanton, Kimball, or Campbell in trying to secure money, "and refused to aid them whenever possible—in fact, refused to aid them at all—and, having in the name of himself and said Bonner the contract for said subsidies and regarding said railway," refused to make any contract for procuring the necessary money, "and refused to inform said Stanton, Kimball, Campbell, or complainants, or any parties whom they sought to interest, or from whom they sought to secure said money, what kind of a contract he, said Hammond, would make or agree to, and refused to give any paper of any kind, or make any agreement of any nature, that would enable anybody to investigate the situation, and, if satisfactory, accept the specified terms." It is alleged that by reason of such refusal on the part of Hammond, acting for himself and Bonner, Stanton, Kimball, Campbell, and the complainants were, and that each of them was, prevented "from procuring the necessary money with which to build said railroad, and prevented from 'financing' said enterprise, which otherwise they would have been able to do, and would have done." It is alleged that pending the negotiations Bonner assigned all his interest in the contract of November 30, 1894, to Hammond, and that Kimball, with the approval of Hammond, assigned all his interest therein to Stanton, and that it was thereupon agreed that Stanton should hold the same for the benefit of himself, Campbell, and the complainants in the proportion above stated, of which agreement Hammond had notice. It is alleged that, after refusing to co-operate with Stanton, Kimball, Campbell, and the complainants, Hammond proceeded to and did procure the railroad mentioned to be built, and acquired and procured to be conveyed to him the subsidies referred to, and that he has also acquired a large amount of other property and money as further subsidies for the building of the railroad, aggregating upwards of a million of dollars in value. It is alleged that the profits realized by Hammond are large, and consist of various classes of property in part described in the bill; that the

work done and money expended by Stanton, Kimball, Campbell, and the complainants in securing subsidies and in carrying out the plan and purpose specified in the contract was of great value; that neither Campbell nor the complainants have received any compensation for their services so rendered, nor have either of them been repaid any part of the moneys so expended by them. It is alleged that the refusal of Hammond and Bonner to co-operate with Stanton, Kimball, Campbell, and the complainants in their efforts to secure the money with which to build the road was a fraud upon them, and each of them, by which Hammond sought to deprive them of their part of the profits of the enterprise, and that Hammond has appropriated the entire profits to his own use. It is alleged that the complainants were unable to get any information from Hammond in respect to his actions or intentions in the matter, and that they were informed by Stanton from time to time that no definite action had been taken in regard to the raising of money for the construction of the road, but that its building was still in contemplation, "and complainants did not know that said road had been built until very recently, and as soon as they discovered the fact that it had been built, and said bonuses and profits appropriated by said Hammond to his own use, they immediately began the investigation of the facts and the preparation of this bill of complaint." It is alleged that Stanton had been requested to join in the suit, but had refused to do so; that Stanton, after acquiring the interest of Kimball, and while Hammond was building the road, entered into a conspiracy with him to cheat and defraud Campbell and the complainants out of their rights in the premises, and in pursuance of such conspiracy Stanton and Hammond "secretly and fraudulently concealed from said Campbell and said complainants what was being done in regard to said enterprise and in regard to the carrying out of said contract as aforesaid, and refused to give said Campbell or said complainants any information in regard thereto, and said Stanton and said Hammond have secretly and fraudulently divided the profits realized on the carrying out of said contract, the acquisition of said subsidies, and the building of said railroad as aforesaid, between themselves." It is alleged that Hammond claims to have conveyed certain of the property mentioned in the bill to the defendant the Astoria Company, which conveyance was without consideration, and with knowledge of the facts alleged in the bill. It is alleged that complainants have acquired all the interest of Campbell. The prayer is that Hammond be required to account to the complainants, and that they be adjudged to be the owners of an undivided two-thirds of four-ninths of the real property described in the bill, and that a conveyance thereof be decreed to them, as well as a decree for profits, etc.

We are of the opinion that the bill makes no case against Hammond, for several reasons. In the first place, the complainants claim only a portion of the right secured to Stanton by the contract of November 30, 1894. By that contract he and Kimball constituted the "party of the second part" thereto, and their undertaking was to finance the entire enterprise and secure the funds required for the purchase of the Seaside Railway and its franchises, and for the con-

struction of the contemplated railroad. Their plan was stated in the contract and expressly accepted by Hammond and Bonner; and the contract expressly declared that Stanton and Kimball had already had preliminary negotiations with parties who would undertake to furnish the necessary money, and were "confident of their ability to secure such money." The consequence of their failure in that regard is also distinctly declared in the contract itself, as follows:

"It is hereby further mutually agreed and understood that, in case the said party of the first part [Hammond and Bonner] fail to secure the contracts herein referred to, that they will surrender all claims and not be entitled to any interest therein—and in case the party of the second part [Stanton and Kimball] fails to secure the money to carry out said contracts, as contemplated, and that burden falls upon the party of the first part, the said party of the first part shall not in such case be bound to divide any of the profits of the enterprise with the said parties of the second part."

It is not pretended that either Stanton or Kimball ever secured any money for the purposes contemplated, or produced any one willing, under any conditions or circumstances whatever, to advance the required money, or any part thereof, but that burden, according to the averments of the bill itself, fell upon and was borne by Hammond. It is true that it is alleged that the latter refused to state what commissions he was willing to pay or that should be paid to secure the money, or the kind of a contract he would make to that end, and that he refused to work with the complainants Stanton, Campbell, or Kimball in good faith in an effort to secure the funds. "The kind of a contract" upon which the money was to be provided by Stanton and Kimball was expressly proposed by them, and accepted by Hammond and Bonner in the written agreement executed by and between those parties. The determination of the question of commissions did not rest with Hammond alone. The contract, as has been seen, provided for the payment of such commissions "as should be agreed upon between the lenders and all the parties" thereto. Manifestly, until some one was found who would loan the money, the question of commissions was premature; and when it should arise it was to be determined no more by Hammond than by Stanton, and not by those two, even, but by all of the parties to the contract, together with the lenders. It is not alleged that Hammond or Bonner put any obstacles in the way of Stanton and Kimball's securing the money. No fact is alleged from which the court can see, or even infer, that their failure to secure the money they contracted to secure was caused by any act of Hammond or Bonner, or their refusal to do anything demanded by their contract to be done. There is not a fact alleged even tending to show that Stanton or Kimball ever had any particular person, corporation, or company, even in contemplation, willing to furnish the required amount upon any sort of terms or conditions. Upon such a bill, it is idle to claim that the failure of the parties who contracted to furnish the funds was caused by the other parties. Moreover, Hammond had no contractual relations with the complainants. His and Bonner's contract was with Stanton and Kimball. The fact alleged that the complainants and Campbell had a verbal agreement with Stanton by which they were to be entitled to a certain portion of Stanton's profits under his contract with

Hammond and Bonner, of which verbal agreement Hammond and Bonner had knowledge, did not in any wise establish any contractual relations between the complainants and Stanton on the one part and Hammond and Bonner on the other. Rockafellow v. Miller, 107 N. Y. 507, 14 N. E. 433; Burnett v. Snyder, 76 N. Y. 344; Bates on Partnership, §§ 164, 167; Johnstone v. Robinson (C. C.) 16 Fed. 903; Am. & Eng. Enc. of Law (1st Ed.) 933.

It is nowhere alleged that there was ever any contract between the complainants and Hammond. Their only interest could, according to the averments of the bill, come through Stanton, and, as Stanton never acquired any, for the reason that he wholly failed to furnish the funds he contracted to furnish, it follows that the bill is without equity, and was properly dismissed.

The judgment is affirmed.