[No. 8230.]

## HOLLINGSWORTH v. TUFTS

1. MINING PARTNERSHIP—*Accounting.* One who demands an account of profits gained by another from mining properties, upon allegation of a partnership, must show the relation existing at the time of the acquisition of the properties.

Plaintiff and defendant had united in an adventure for securing mining interests for their joint account, in Mexico. Large advances made by plaintiff had been expended, without results, and their relation had been abandoned. Defendant was not liable to account to plaintiff for gains made in another similar adventure, instituted years after the partnership had terminated.

2. EVIDENCE—*Admissions—By Silence.* Plaintiff testified that during certain years he had advanced to defendant thousands of dollars on account of mining operations and speculations in Mexico. He produced no written evidence whatever of a single advance; and it appeared that for years after the alleged advances, he knew the whereabouts of defendant, or could have easily ascertained it, that he knew in a general way in what defendant was engaged in Mexico, and during all these years he made no demand upon defendant, either for money or an account, nor in any way intimated to him a claim to be interested in his operations. Plaintiff's testimony as to his advances was therefore rejected.

3. CONTRACTS—*Construed.* Oral promise to extend aid to another construed as an expression of good will and gratitude for previous favors, and not as importing an obligation.

4. PRACTICE—*Withdrawing Motion for New Trial,* has not the effect to withdraw from the consideration of the court exceptions and objections to the report of the referee, filed therewith. (Rev. Code, Secs. 231-233.)

5. PARTNERSHIP—*Accounting—Dissolution—When Ordered.* An accounting is not to be allowed where the plaintiff has already received whatever he was entitled to from the joint adventure.

Nor is the dissolution of the firm to be ordered.

The partnership is in such case dissolved by operation of law.

6. JUDGMENT—*Effect.* Bill for account of a partnership. Judgment for the defendant has the effect to vacate a previous interlocutory finding that an unadjusted partnership exists between the parties.

*Error to District Court of El Paso County.* Hon. W. S. MORRIS, Judge.

Mr. R. S. JULIAN and Mr. R. L. HOLLAND, for plaintiff in error.

Messrs. ORR, ROBINETT & MASON, and Mr. L. W. CUN-NINGHAM, for defendant in error.

On rehearing.

CHIEF JUSTICE GABBERT delivered the opinion of the Court.

Hollingsworth instituted an action against Tufts for an accounting and a dissolution of the partnership he claimed existed between them. In his complaint he alleged that in 1898 the defendant represented to him that there were large undeveloped mineral deposits of gold, silver and copper in the state of Sonora, in the Republic of Mexico; that he desired to go there and locate mines and then arrange for their development and sale, but was without funds and if plaintiff would advance him money to cover the expenses of traveling and supporting himself and wife during the time required, he would go to Mexico and "prospect for mineral properties and everything he discovered or located or acquired, in any way whatsoever, that plaintiff should be a one-half owner thereof, and a full partner with defendant in everything he discovered or acquired." Hollingsworth then alleges that he accepted the proposition and advanced Tufts money to pay his expenses to Mexico and continued to furnish him money during the years 1898 to 1902, inclusive, to carry on their joint operations, and that Tufts while using the money so advanced, discovered, located and acquired title to a great many valuable pieces of mining property, which he has disposed of but has not accounted to plaintiff for his share of the proceeds thus realized. The answer of Tufts was a general denial.

The court found that a partnership existed between the parties which had never been adjusted or settled, by virtue of a contract entered into between them about September or October, 1898, "by the terms of which the

plaintiff agreed to furnish a sufficient sum of money to defray the necessary expenses for outfitting and traveling by the defendant while making a trip into the state of Sonora, in the republic of Mexico for the purpose of discovering and locating mines and mineral property; that plaintiff and defendant should each be an owner of one-half of whatever mines or mineral properties the defendant might discover or acquire while upon said trip''; that plaintiff furnished the money as agreed; that defendant went to the state of Sonora and discovered mines and mineral properties; that this trip was made between the month of October, 1898, and the early part of the year 1899; ''that the plaintiff is entitled to an accounting from the defendant as to what mines or mineral properties the defendant discovered or acquired as the result of his prospecting and exploiting upon said trip made into the state of Sonora in the Republic of Mexico above mentioned,'' and adjudged that the parties should ''share equally in whatever mines or mineral properties the defendant discovered or acquired by discovery or knowledge gained during said trip''; that plaintiff was entitled to have the defendant account to him for whatever mines or mineral properties he so obtained. The court further ordered that a referee be appointed and an accounting be had, and ''that he ascertain what mines or mineral properties the defendant discovered or acquired by reason of such trip made into the state of Sonora in the Republic of Mexico, and that such referee is hereby ordered and directed to make both finding of facts and finding of law pertaining thereto and report to this court.''

Pursuant to this order the referee proceeded to take testimony, and filed his report, from which it appears he found that defendant was indebted to plaintiff in the sum of $315,500 and 12,970 shares of the stock of the

Grand Union Mining Company. This indebtedness was fixed by the referee as recited in his report, upon the ground that Tufts received money and stock from the Grand Union Mining Company for property "that he got acquainted with and acquired knowledge of during his trip into Mexico in 1898 and 1899," and for this reason should account to plaintiff for his share of the money and stock obtained from this source. To this report the defendant filed exceptions in connection with a motion for a new trial. The exceptions were sustained upon the ground that the evidence taken before the court at the time it was determined a partnership existed between the parties, and by the referee, on the subject of accounting, was not sufficient to support the findings of the referee as to the money and stock and also adjudged that the action be dismissed and that defendant have judgment against plaintiff for his costs. Hollingsworth brings the case here for review on error.

It appears from the testimony that the parties entered into an oral agreement about October, 1898. On behalf of plaintiff it is urged, that it constituted them partners as promoters, while on behalf of defendant it is contended, that it is what is known in mining parlance as a "grubstake contract." We do not deem it necessary to determine what particular term should be applied to this contract as their rights must be ascertained from the facts established by the testimony bearing on the subject of their relations and respective rights created by their agreement of October, 1898.

According to the averments of the complaint, plaintiff was to advance defendant funds to enable the latter to prospect for mineral properties in the state of Sonora; that everything he discovered, located or acquired in that locality, plaintiff was to be the owner of one half, and that from 1898 to 1902, inclusive, he advanced Tufts

money to pay his expenses to Mexico and, that Tufts while using the money so advanced discovered, located and acquired title to valuable pieces of mining property, which he has disposed of, but has not accounted to plaintiff for his share of the proceeds thus realized. The finding of the court from the testimony taken previous to the appointment of the referee is to the effect that the parties entered into an agreement in September or October, 1898; that by the terms of this agreement plaintiff agreed to furnish money to defray the expenses of the defendant for a trip into the state of Sonora for the purpose of discovering, locating and acquiring mines and mineral properties; that each of the parties should be an owner of one half of whatever mines or mineral properties the defendant discovered or acquired "*while upon said trip*"; that plaintiff furnished the money as agreed; that defendant went to the state of Sonora and discovered mines and mineral properties; that plaintiff was entitled to an accounting from defendant to the mines or mineral properties the latter discovered or acquired as the result of "*his prospecting and exploiting upon said trip*"; that the parties should share equally in the mines or mineral properties the defendant discovered or acquired by knowledge gained "*during said trip*"; and that the referee appointed ascertain what mines or mineral properties the defendant discovered or *acquired "by reason of such trip."*

It is thus apparent that the allegations of the complaint and the findings of the court are not in harmony in this, that according to the complaint the defendant was to prospect for, locate and acquire mining properties without any limit as to time, while from the findings of fact by the court the parties were to be joint owners in whatever defendant discovered or acquired on his trip in the fall of 1898. This finding of fact is fully sustained

by the testimony, so that it becomes necessary to ascertain the scope of that agreement, and what properties the defendant discovered or acquired on that trip. On this subject we think the evidence establishes beyond question that the agreement between the parties was, that if plaintiff would furnish defendant sufficient funds to enable him to go to Chicago, and interest capital to take up an option on the Higueras mine in the state of Sonora, which was held by one Philo Thompson, he, the defendant, would give plaintiff one half of what he made out of the deal. The evidence establishes that for this purpose plaintiff advanced defendant funds to go to Chicago; that the latter went there and succeeded in interesting one MacConnell in the Higueras, who returned to Kansas City with him, where they remained several days, during which time they were with Hollingsworth; that the latter advanced additional funds to enable the defendant to go to Mexico; that defendant and MacConnell went there, visited the Higueras property; that MacConnell declined to take it, and defendant then returned to Kansas City. This ended the agreement entered into between the parties in the fall of 1898, and it is only necessary to further consider the case for the purpose of explaining other transactions in which the parties were subsequently interested, but not acquired under their original agreement. When Tufts returned from Mexico after his failure to interest MacConnell in the Higueras property, he reported there were properties there he could obtain; that Hollingsworth then interested some of his friends who advanced funds to enable Tufts to return to Mexico, which he did and located or secured several mining claims spoken of in the record as the Mananita Group. This property was transferred to the Mananita Mining Company and all parties interested, including the plaintiff and defendant, obtained their *pro rata* share of the stock.

This was in the early part of 1899. In April of that year, Hollingsworth and one Merry, who had advanced money for Tufts to make the second trip, went to Mexico, and while there an option on the Higueras mine was obtained, and later or about August 1, 1899, that property was purchased. It was transferred to a corporation, and one-half of the stock transferred to the Mananita stockholders, which included Hollingsworth and Tufts, and the other half to the parties who had advanced money to take up the option. A stamp mill was installed on this property, with Tufts in charge. About January, 1900, the stockholders became dissatisfied with the management of Tufts, and Hollingsworth and Merry again went to Mexico. Merry was placed in charge of the property and Tufts retained as assistant. About May 1st, 1900, Merry closed down the mill, and he and Tufts returned to Kansas City. Both of these ventures were flat failures financially. We think the evidence establishes that Tufts then went to New York City, principally for the purpose of trying to dispose of some of the stock in the mining companies they had incorporated, or dispose of the property belonging to these companies. He was without funds, and borrowed money on a note which was signed by Hollingsworth as surety. This note, except a small amount of interest, was finally paid by Tufts. In our former opinion we stated that Tufts induced Hollingsworth to advance money to enable him to go to New York and interest a syndicate to put up money for them to float other properties he and Hollingsworth had in Mexico. This was a mistake, because it appears that Hollingsworth did not advance him money for this purpose; that he only became a surety on the note to which we have referred and at that time, Hollingsworth was not interested with him in any properties other than those mentioned, in Sonora or elsewhere in Mexico. Tufts

never made any disposition of these properties or stock therein. In 1901, and later, or about 1906, Tufts organized other companies which acquired properties in Sonora and adjoining states in Mexico, notably the Sonora and Sinaloa and Grand Union Mining Companies, and it is the profits arising from these transactions which plaintiff claims defendant should account for. Having determined the scope of the agreement which the parties entered into in the fall of 1898, we would ordinarily decline to further review the testimony, were it not for the fact that, based on depositions, oral testimony, and correspondence between the parties, counsel for plaintiff urge that such relationship is thereby established between them at the time of the Sonora-Sinaloa and Grand Union transactions, under their agreement of 1898, that plaintiff is entitled to a share of the profits resulting therefrom. Plaintiff testified that he advanced defendant between three and four or five and six thousand dollars, to enable him to carry on their operations. If this is a fact, then the bulk of such advances must have been made subsequent to closing down the Higueras mine, as up to that time, the amount of money he advanced, either to Tufts or for the purpose of purchasing properties, did not exceed a few hundred dollars. In fact, in his complaint, which is verified, he limits his advances under what he terms, their partnership agreement, to ''many hundreds of dollars.'' When asked whether he had a letter or receipt from Tufts acknowledging receipt of any money he advanced, he answered no, and admitted he did not have any record or memorandum of the advances nor a check, draft or scratch of a pen to show he advanced defendant any money, and although requested, did not attempt to produce any records to show he had advanced Tufts a dollar. The only record evidence on this subject is, that from letters, it appears he had loaned Tufts small

amounts, all of which were repaid. The testimony discloses that Hollingsworth knew where Tufts was during all the time after he left for New York in 1900, or could have readily ascertained where he was located, in a general way knew what he was doing in Mexico, and he never made any demand on him for an accounting, nor requested him to pay a dollar as due him for alleged profits growing out of the transactions in which Tufts was engaged or deals he had consummated. It appears that Hollingsworth, from his own letters was trying to get a lease on the Higueras, and wanted Tufts to advise him whether it could be made to pay, and requested Tufts to try and secure him some placer ground in the vicinity of where the defendant was operating, and concedes, that during all the years subsequent to the date when Tufts went to New York in 1900, he never wrote him a letter intimating that he was interested in any property with Tufts or in any deals except the Higueras and Mananita properties.

In the face of this testimony it is incredible that Hollingsworth advanced Tufts the large sums he claims, and the expressions in letters of Tufts after he went to New York, and in fact when carefully considered, are nothing more in effect than an intention to aid Hollingsworth, if he succeeded, not because he was under any obligations to do so, or that they were jointly interested in any deals which Tufts was trying to consummate, but on account of their former relations, and that Hollingsworth had aided him in first going to Mexico.

There is also testimony of witnesses on behalf of Hollingsworth to the effect that Tufts told them Hollingsworth was jointly interested with him, but we are satisfied that whatever Tufts said on this subject was at the time when jointly interested with others, they were try-

ing to secure or were operating the Mananita and Higueras properties.

There is another phase of the case which clearly demonstrates that Hollingsworth is not entitled to an accounting for profits, if any, arising from deals made by Tufts, after he left Kansas City for New York in 1900. Hollingsworth testified that Tufts told him if he secured the money on the note we have mentioned, which would enable Tufts to go to New York, the latter said "You need not worry, you will be taken•care of, you will be equal in anything I do if you will get me this money." This is not the agreement relied upon by plaintiff as alleged in his complaint but a subsequent one. However, it is not necessary to base a decision on this proposition, because it appears from the findings of the court and the referee, that notwithstanding the testimony of plaintiff and his witnesses, relating to admissions on the part of Tufts, (which he denies), that Hollingsworth was interested with him, the latter is not entitled to an accounting.

The court found the terms of the contract between the parties to be, that plaintiff agreed to furnish funds to enable defendant to make a trip to Mexico for the purpose of discovering and locating mines, and determined that whatever mines or mineral properties the defendant discovered or acquired by discovery or knowledge gained on the trip, they should share equally. The referee was directed to ascertain what properties the defendant discovered or acquired on that trip, and determined the plaintiff was entitled to an accounting because defendant "got acquainted with and acquired knowledge of" the properties held by the Grand Union Mining Company, during his trip in 1898 and '99, so that even if the agreement between the parties of October, 1898, was not limited to the Higueras Mine, the evidence establishes be-

yond question that the plaintiff, on the finding of the court and referee, is not entitled to any profits growing out of either the Sonora and Sinaloa or Grand Union deals. None of the properties of these companies were discovered or acquired by defendant, nor did he obtain any knowledge of them, on his trip in the fall of 1898. The time occupied on that trip was but 58 days, and he was at the Higueras mine and vicinity only two or three days. There is no testimony that he learned or knew anything regarding the properties afterwards obtained by the Sonora and Sinaloa and Grand Union companies during this time. We are not advised where the properties of the former company are located with reference to the Higueras, but it does appear, that the properties of the Grand Union are located from thirty to sixty miles distant from that property. In brief, there is not a syllable of testimony tending to prove that Tufts gained any knowledge of the properties of the companies mentioned, on his first trip. On the contrary, the testimony establishes that he knew nothing regarding them until long subsequent. He may have learned that the country adjacent to the Higueras was a promising district, but that will not justify a finding that he acquired or gained knowledge of any particular property, in the absence of testimony to support it. It appears that Hollingsworth received in the way of stock, all he was entitled to, in any manner growing out of the Mananita and Higueras transactions, and limiting his rights as found by the court and determined by the referee, to acquisitions or knowledge gained on the trip in the fall of '98, plaintiff is not entitled to an interest in the subsequent deals in which Tufts was interested or which he may have consummated. The law is well settled that the partnership relation between parties engaged in acquiring mining properties for their joint benefit must exist at the

time such properties are acquired by one of the parties to such an arrangement, in order to entitle the other to an interest therein. *Johnstone v. Robinson,* 16 Fed. 903.

After the report of the referee was filed, plaintiff filed a motion to confirm that report. The defendant also filed exceptions and objections to the report, in connection with a motion for a new trial. These several matters were later considered by the court, with the result that the motion to confirm was denied, and it was further ruled that the evidence was insufficient to sustain the report; that it be set aside; that defendant was entitled to judgment for his costs. Thereupon additional time to a day certain was granted plaintiff to take such further steps as he might be advised. After expiration of this time the record discloses that no further action was taken by plaintiff, and that defendant was permitted to withdraw from his objections and exceptions, his motion for a new trial, and thereupon judgment was rendered dismissing the action and taxing the costs to plaintiff. Counsel for plaintiff now contend that when defendant withdrew his request for a new trial, the court was without authority to consider the objections and exceptions to the report, and that judgment should have been rendered thereon in his favor. Our Civil Code (Revision of 1908), sections 231, 232 and 233, provide in substance, that the finding of the referee shall stand as the findings of the court, and upon being filed with the clerk, judgment shall be entered thereon unless objected to by either party, "by filing a motion for a new trial as hereinafter provided"; that when the report is filed, the clerk shall notify the parties, and judgment shall not be entered thereon until five days after such notice, nor until the court has passed upon the objections specified in the motion for a new trial; that the court may grant a new trial, or may modify the findings of the referee, and enter judg-

ment, when it is manifest from the evidence reported what the findings and report should be. Under these several provisions it is clear that withdrawing the request for a new trial did not deprive the court of authority to enter judgment on the objections and exceptions to the report. The court is expressly authorized to grant a new trial or enter judgment, and when it determined that judgment should be rendered for the defendant, a new trial was not necessary. When the court announced that judgment would be rendered for the defendant, the effect was to overrule the motion for a new trial, and withdrawing the request therefor in these circumstances did not change the situation.

It is also urged that the court erred in taxing the costs to plaintiff, because, prior to reference, it had determined that a partnership existed which had not been settled, and this finding not having been set aside the court should have ordered a dissolution of the partnership and taxed the costs to defendant. When it appeared to the court from the testimony taken before the referee, that the partnership originally existing between the parties had been settled, in that plaintiff had received from defendant all to which he was entitled growing out of their joint ventures, there was nothing upon which to base an accounting, and in such circumstances their partnership was dissolved by operation of law. The effect of the judgment as finally entered by the court was to set aside its interlocutory finding that a partnership between the parties existed which had never been adjusted.

The former opinion is withdrawn and this substituted in lieu thereof, but as previously announced, the judgment of the District Court is affirmed.

*Judgment affirmed.*

Decision *en banc.*

Mr. Justice Scott and Mr. Justice-Teller not participating.

Decided January 3, A. D. 1916. Rehearing granted July 3, A. D. 1916. Judgment affirmed on rehearing January 2, A. D. 1917.