## UNITED STATES v. LANDRIEUX.
### No. 5255.

Circuit Court of Appeals, Seventh Circuit.
Jan. 29, 1935.

Paul F. Jones, U. S. Atty., of Danville, Ill., Walter E. Ackermann, Asst. U. S. Atty., of Belleville, Ill., Will G. Beardslee, Director, Bureau War Risk Litigation, of Washington, D. C., and Randolph C. Shaw, Sp. Asst. to Atty. Gen., for the United States.

Harold F. Lindley and Walter T. Gunn, both of Danville, Ill., for appellee.

Before EVANS, SPARKS, and FITZ-HENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

In April, 1918, Alfred F. Landrieux enlisted in the military service of the United States. He was honorably discharged in March, 1919. While in the service he obtained a policy of war risk insurance which lapsed on May 1, 1919, by reason of nonpayment of the premium which was due April 1, 1919. His death, in January, 1922, was due to tuberculosis of the lungs. Mary Landrieux, mother of Alfred F. Landrieux, and the beneficiary named in the insurance policy, brought this suit ten years later, on January 2, 1932, in the District Court for the Eastern District of Illinois to recover the amount payable under the policy. She alleged that while the insurance was in full force and effect, and while serving in the United States Army, the said Alfred F. Landrieux became and was totally and permanently disabled, so as to render him unable to follow continuously any substantially gainful occupation and that he remained in that condition until his death.

At the close of plaintiff's evidence and again at the close of all the evidence, the United States moved for a directed verdict. The motions were denied and, a jury having been waived, the court found for plaintiff and gave her judgment for $5,000, from which judgment the United States took this appeal.

■ Appellee relied upon the disability of tuberculosis to establish that insured was permanently and totally disabled on or before the lapse of the insurance on May 1, 1919. The evidence, however, was not confined to the period on or before the lapse of the policy since the subsequent condition of the insured was pertinent insofar as it tended to show whether he was totally and permanently disabled before the policy lapsed. Lumbra v. United States, 290 U. S. 551, 560, 54 S. Ct. 272, 78 L. Ed. 492. The United States contends that the evidence in the case wholly fails to support the finding of the District Court and that is the sole question here presented for consideration.

The evidence may be briefly summarized as follows: Alfred F. Landrieux was twenty-two years of age and in excellent health when he enlisted in the United States Army. He had previously been employed as a coal miner. While serving in France, he was exposed to inclement weather and developed a severe cough. Upon his return home, his mother, sisters, and brother-in-law testified that he had a persistent cough. On his discharge, however, he had stated that his health was good and this fact was certified by his commanding officer and by a medical officer who examined him. Insured never received treatment at any army or navy hospital and reported on sick call only once, and then because of an earache.

Almost immediately upon returning home insured resumed work as a coal miner and worked with practically no time off from April, 1919, to November, 1919. There was evidence that he was able to do this work and draw full pay only because he was materially assisted by his co-worker, an old school chum who later married the sister of insured. At some time shortly following his return from the service, insured consulted Dr. J. M. Hickman, who found him suffering from an acute cold and bronchitis for which he treated him. Tuberculosis was not

suspected and no test was made for it. The patient did not improve under the treatment. Members of his family testified that during this period he continually coughed, had to sit up to sleep, had some night sweats, and frequently vomited his breakfasts. On December 27, 1920, insured claimed compensation for a disability and stated in his application that his disability did not begin until December, 1919, or nine months after his insurance had lapsed. Various medical reports which were introduced in evidence show that while in government hospitals, approximately two years after leaving the service, insured stated to the examiners that he felt well until October, 1919, when he began to have bad colds and coughed, lost weight, felt weak. The cold continued until spring when he felt all right again. That he worked all winter and summer of 1920. That he caught cold again in November, 1920, but worked until December, 1920, when he was laid off.

In December, 1919, insured secured a position with the Ford Motor Company of Detroit and was found by the medical examiner of that company to be in good physical condition. He did machine and assembly work. There is evidence that the work was not heavy and that he sometimes came home early because he felt bad. On the other hand, he received the same pay as other men doing the same work, he was twice promoted (once automatically and once on the recommendation of his foreman), and the records of the Ford Company show that he was absent from work but little and that he received wages of $1,723.65 during employment of approximately one year.

Insured entered a government hospital at Detroit, Mich., in December, 1920, and remained in a government hospital until his death on January 3, 1922.

The only medical opinion as to whether insured was totally and permanently disabled before his policy lapsed is that contained in a "Physician's Statement" made by Dr. Hickman to the Veterans' Administration on May 9, 1933. Dr. Hickman answered in the negative when asked whether he believed that the condition as found by him would continue without improvement throughout the lifetime of the veteran. He also stated as the reason for his conclusion that he thought the condition would have improved as it did not appear serious at the time of treatment. In addition there is the statement of the army physician, made two weeks before the date when the policy

lapsed, to the effect that he found no disability.

We think that all the evidence in this case falls far short of showing that the tuberculosis with which insured was afflicted had progressed to a stage where he could be said to be permanently and totally disabled at the time when the policy of insurance lapsed, within the requirements of Falbo v. United States, 291 U. S. 646, 54 S. Ct. 456, 78 L. Ed. 1042; United States v. Spaulding, 55 S. Ct. 273, 79 L. Ed. ——; Nicolay v. United States (C. C. A.) 51 F.(2d) 170, 173. In the latter case the court said: "It is a matter of common knowledge that many such incipient tuberculars respond readily to the simple treatment of rest and nourishment; the activity is arrested, and, while there probably always will be a susceptibility of recurrence, they are able to, and do, live out their lives following gainful occupations. On the other hand, there are some that do not respond to treatment, and their condition is incurable from the start. The burden of proof is upon the plaintiff; if his evidence leaves it a mere matter of speculation as to the permanence of his condition in May, 1919, he cannot recover."

The evidence, together with all the inferences which may properly be drawn therefrom, are not sufficient to form a basis for a judgment for appellee, and the trial court should have directed a verdict for appellant.

Reversed and remanded.