## COYNER et al. v. UNITED STATES.

### No. 6723.

Circuit Court of Appeals, Seventh Circuit.

April 11, 1939.

Rehearing Denied May 18, 1939.

Julius C. Martin, of Washington, D. C., Wm. C. Pickett, Sp. Asst. to Atty. Gen., Keith L. Seegmiller, of Washington, D. C., and Wm. J. Campbell and Wm. M. Lytle, both of Chicago, Ill., for appellant.

Stephen A. Cross, of Chicago, Ill. (Kenneth B. Kirk, of Chicago, Ill., of counsel), for appellees.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This action was brought by the plaintiffs to recover on a war risk insurance policy issued to Edwin P. Dempsey, who enlisted as a private in the United States service February 23, 1918, was honorably discharged February 24, 1919, and died December 10, 1926 of pulmonary tuberculosis and tuberculosis laryngitis. His contract of war risk insurance expired on March 31, 1919, unless the insured became permanently and totally disabled prior thereto. The verdict of the jury was in favor of plaintiffs, that insured was totally and permanently disabled on March 31 of 1919, and judgment was entered thereon.

The first question presented for our consideration is whether the evidence of permanent and total disability before the policy lapsed is sufficient to sustain the verdict of the jury.

The record discloses that when the insured entered the service he was 24 years of age and in good physical condition; whereas, when he returned from the army, he was pale, listless, and in a weakened condition; and he had lost weight and had a constant cough. In April 1919 he consulted a physician, who treated him until 1921, prescribing a build-up diet for tubercular persons.

At the time of his discharge insured signed a statement that he had no reason to believe that he was suffering from any disease or that he had any disability or im-

pairment of health, while a report of an officer in the medical corps certified that on February 19, 1919 the insured was physically sound.

It also appears that on March 3, 1919 the insured was employed by Swift & Company as a laborer for fifteen days. He left because he was physically unable to continue. Two months after leaving the employ of Swift & Company he worked for Boone-Cement-Block Company for two and one-half weeks, shoveling sand. Ill health compelled him to quit. For one week in June 1919 he worked for Armour and Company. On October 14 he resumed work with that firm and continued until November 21, 1919. On December 8, 1919 he returned to Swift & Company, remaining until January 5, 1920 when he was compelled to retire because of his physical condition. He was never gainfully employed thereafter.

On May 5, 1921 the insured was examined by a physician connected with the United States Veterans' Bureau, who found him afflicted with active pulmonary tuberculosis and recommended hospitalization. He was placed in a hospital in New Mexico, remaining there four months, after which he entered the Tuberculosis Sanitorium at Oak Forest, Illinois. On October 3, 1921 he was transferred to the Veterans' Hospital at Hines, Illinois, from which he was discharged on November 11, 1921. He re-entered Oak Forest Tubercular Sanitorium in February 1922 and remained until April 1922. In May 1922 he was sent to the United States Veterans' Bureau at Fort Lyon, Colorado. In November 1922 he returned to his home in Chicago, where he continued to be treated for tuberculosis until his death in 1926.

The record also discloses that Dr. A. C. Tenney, who had been engaged since 1895 in the active practice of medicine and had specialized in treating tuberculosis diseases, testified as to the nature and symptoms of tuberculosis; its treatment and its effect upon the activities of a person afflicted; and its curability or incurability. Then Dr. Tenney gave his opinion, based upon a hypothetical question embodying the above facts, that the hypothetical individual was on or prior to March 31, 1919 in "the very earliest stages of tuberculosis," and that "the activity was there. It was beginning."

■ Counsel for defendant insists that "it is clear that an insured, who permitted his insurance to lapse while suffering from a temporary total disability which became permanent by reason of subsequent aggravation, cannot obtain benefits under his lapsed insurance on the grounds that the disability had its inception during the life of the policy." That is, he argues that at most the evidence in this case indicates that the insured was merely an incipient tubercular during the life of the insurance policy. We agree with this statement of the law, but we are of the opinion that this rule is not applicable in the instant case. Here, the insured was more than a mere case of an incipient tubercular. From the time of his discharge he was not in good health; he was pale, listless, and in a weakened condition. He had lost weight and had a constant cough, was unable to do ordinary work, and grew progressively worse under physician's care; and after January 5, 1920 he was not gainfully employed, and this condition continued until his death in 1926. In our opinion this record discloses that there was substantial evidence pertaining to insured's physical condition at the time he exhibited the common symptoms of tuberculosis in February of 1919 to justify the finding of the jury that he became totally and permanently disabled during the life of the insurance policy and that he continued in such condition until his death.

■ Counsel also argues that the evidence reveals improper treatment as aggravating insured's disease into permanent disability after the lapsing of the policy. Counsel has particular reference to the immediate period after discharge and before January 5, 1920, during which time the insured made several unsuccessful efforts to earn a living as he had done before enlistment in the service. Of course, this is a fact to be considered with all of the other facts bearing on the question of permanency of disability prior to March 31, 1919. Lumbra v. U. S., 290 U.S. 551, 558, 54 S.Ct. 272, 78 L.Ed. 492. Since no exceptions were taken to the court's instructions to the jury, we must assume that the jury was properly instructed in this regard and that the jury duly considered the circumstances. It is true that trying to work might aggravate a disease, but this circumstance per se does not necessarily indicate the extent and permanency of the disease. Thus, the Supreme Court said in U. S. v. Spaulding, 293 U.S. 498, 505, 55 S.Ct. 273, 276, 79 L.Ed. 617:

"It may not be assumed that occasional work for short periods by one generally disabled because of impairment of mind or body does as a matter of law negative total permanent disability."

In this connection it must not be forgotten that the insured was under physician's care, and that his inability to work from the very start · also indicates the progress and pronounced effect of the disease. In all events, viewing the picture as a whole, that is, his condition before and at the lapse of the policy, his inability to work from the very start, the frequent hospitalizations and constant treatment, and the progressive decline of his health, we are not prepared to say that the finding of totality and permanency of disability during the life of the policy is not supported by substantial evidence.

■■ Counsel for defendant also relies upon the proposition that "Whether tuberculosis existed and, if so, whether it has progressed to the stage of incurability, is · strictly a medical question" and that "Diagnosis of an obscure malady may be made only by medical experts." Various witnesses testified as to the conduct, appearance and history of the insured before and after the lapse of the policy. We cannot agree that this non-professional testimony which related to the conduct and history of the insured bearing on the issue of the totality and permanence of his disability was inadmissible.

■■ In these cases the real issue is the existence of "total permanent disability" during the life of the insurance policy. The totality and permanence of the insured's disability is dependent on the facts and circumstances of each particular case. Lumbra v. U. S., 290 U.S. 551, 558, 560, 54 S.Ct. 272, 78 L.Ed. 492. Medical testimony does not in itself decide the issue as to whether there was permanent disability prior to the lapsing of the policy.

This thought was expressed in U. S. v. Spaulding, 293 U.S. 498, 506, 55 S.Ct. 273, 277, 79 L.Ed. 617: "Moreover, that question [totality and permanence of the disability] is not to be resolved by opinion evidence [medical opinions]. It was the ultimate issue to be decided by the jury upon all the evidence in obedience to the judge's instructions as to the meaning of the crucial phrase, and other questions of law. The experts ought not to have been asked or allowed to state their conclusions on the whole case."

■ In this connection it is interesting to note that counsel's propositions in themselves do not help us very much. For instance, direct medical testimony that the insured had active tuberculosis on a certain day is not per se conclusive proof that he was totally and permanently disabled on that day. Nor is a medical diagnosis of advanced tuberculosis in itself conclusive on the question of the totality and permanence of the disability. Nor is medical testimony on the curability or incurability of the disease necessarily conclusive on this issue. Thus, this court, in United States v. Landrieux, 7 Cir., 75 F.2d 536, 537, approved the following statement made on the curability of incipient tuberculosis: "In the latter case [Nicolay v. U. S., 10 Cir., 51 F.2d 170, 173] the court said: 'It is a matter of common knowledge that many such incipient tuberculars respond readily to the simple treatment of rest and nourishment * * *. On the other hand, there are some that do not respond to treatment, and their condition is incurable from the start.' "

Nor can the totality and permanence of the insured's disability be necessarily expressed in terms of curability or incurability of his disease. U. S. v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617.

It follows that counsel's propositions that the existence of tuberculosis and the diagnosis of the disease is "strictly a medical question" do not in themselves decide the issue as to whether there was total permanent disability prior to the lapsing of the policy.

■ It is also contended that the trial court erred in excluding official records of the United States Veterans' Bureau, which reveal that hospitalization made available to the insured was terminated voluntarily by him. Counsel argues that "Since the defense was based in substantial part upon the theory that total disability within the life of the policy was converted into total permanent disability by failure to take treatment after the expiration of insurance protection, the materiality of this evidence is clear." These documents show that twice in June of 1922 the insured left the hospital without permission, and once in October of 1922.

We repeat again that the real issue in the case is the existence of a total permanent disability in March of 1919. We are not unmindful that circumstances bearing on the physical condition of the insured

after the expiration of the policy carry significant weight. Yet, in view of the whole record, we fail to see how the absence without order of leave in the three instances in 1922 amount necessarily to improper treatment or aggravation of the disease, especially in view of the fact that there are in evidence twenty medical reports of physical examinations taken of the insured by physicians of the United States Veterans' Bureau before and after these three 1922 instances. These reports commenced on May 5, 1921 and continued through the years until his death on December 10, 1926. They show definitely that the insured was undergoing continual treatment and care for tuberculosis.

The 1921–1926 medical reports, which are in evidence, tell an interesting story in this connection. From May 5, 1921 to January 3, 1923 the reports manifest insured's desire for hospitalization treatment. The reports from 1923 to 1926 show that he preferred to continue tuberculosis treatments at home under the supervision of the United States Veterans' Bureau Out-Patient Clinic. These same reports also evidence the fact that from 1921 to June 1, 1922 the insured had accepted hospitalization frequently, but that, nevertheless, he had grown progressively worse, until by June 1, 1922 one of the medical reports pointed out that he was an advanced case of tuberculosis, while another showed that he was a far advanced case. In addition, these reports merely disclose that in June and October of 1922 the insured, with an advanced case of tuberculosis, rebelled against hospitalization away from home. In each instance, he immediately carried on tuberculosis treatment at home under the supervision of the United States Veterans' Bureau. Under the circumstances, we are not ready to say that the three 1922 instances, above mentioned, amounted to an aggravation of the disease or to improper treatment, and we are satisfied that this excluded evidence did not deprive the defendant of a fair trial. A reversal on this ground would be unwarranted.

Another assignment of error involves the admissibility of the Auditor's Report in evidence. The order appointing the auditor authorized and empowered him to take testimony, examine the evidence, prepare a written report and make findings upon the evidence. In addition, the order declared that upon trial the Auditor's Report shall be admitted as prima facie evidence of the evidentiary facts and conclusions of facts therein found. No objections were made to the order appointing the auditor or to the order referring the cause to the auditor.

The Auditor's Report contained findings of fact in favor of the insured and conclusions thereon to the effect that the insured "became permanently and totally disabled * * * on March 25, 1919." Defendant filed specific written objections to the Auditor's Report, stating that the findings of fact therein were not supported by the evidence and that the auditor's conclusion was erroneous on the ground that since "he specifically found that the insured, on March 25, 1919, was only suffering with pulmonary tuberculosis, incipient, active * * *" the courts took "judicial knowledge of the fact that incipient tuberculosis is not totally and permanently disabling." The court approved the auditor's findings and admitted the same prima facie of the facts and findings embodied therein.

At the trial defendant specifically objected to the Auditor's Report on the ground that it was not based on substantial evidence. After a consideration of these written objections, the trial court overruled the objections and admitted the report. Findings, concurred in by both the auditor and the trial judge, will not ordinarily be disturbed by an appellate court, unless there is a clear mistake or unless the findings are unsupported by the evidence. Since the record on this appeal does not disclose the testimony of the nine witnesses who testified at the auditor's hearing, we are not in position to question the presumption of correctness that is attributed to the Auditor's Report which has been approved by the trial court.

In addition, the Report in this case was merely prima facie evidence of the facts and findings embodied therein. Defendant was free to call, examine, and cross-examine the nine witnesses who testified before the auditor as if the Report had not been made. This the defendant did not see fit to do. Moreover, we must assume, in absence of exceptions taken to the court's charge to the jury, that the jurors were properly instructed as to the meaning and effect of the Auditor's Report and as to the prima facie character and weight thereof.

Defendant's counsel in the argument before this court raised the point that the whole procedural action, by which the trial court refers to an auditor and then admits in evidence the auditor's complete report, violates the right to a trial by jury. Counsel urges that the trial court in this way is enlarging its judicial power by invading the province of the jury. On the other hand, we are aware that there is much authority for the proposition that an entire case can be referred to a master or auditor, so long as the findings and conclusions are given merely prima facie effect. See Graffis et al. v. Woodward et al., 7 Cir., 96 F.2d 329. This view is supported by statements and inferences made in Ex Parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L. Ed. 919, which upheld a compulsory reference to an auditor in an action at law and accorded the auditor's findings and opinions prima facie effect.

▮ In effect, counsel's argument before this court was an attack on the propriety of the trial court's reference. We find it unnecessary to consider this argument. It is clear that at the trial defendant did not question the extent of the court's power to order a compulsory reference in a law case. Defendant raises the problem for the first time in this court. If either party desires to controvert the propriety of the reference, the proper practice would be to move before the trial court for a revocation of the reference. Failure to make such a motion is to us tantamount to acquiescence and consent, and the point cannot be initially raised before this court.

▮ We do not mean to be understood as approving a practice that all law cases should be referred or that the power to order a reference in law cases is absolute. That question, as we see it on this appeal, is not before us. We believe that whether the aid of an auditor shall be sought in law cases is ordinarily within the discretion of the trial judge. We are not in position on this appeal to question the discretion of the trial court in referring this case to the auditor. We do believe it is far better practice, except where stress of work or other good cause is shown, for the court to try cases where the determination of the issues is dependent upon the credibility of the witnesses. In this connection, it is pertinent to note Rule 53 of the Rules of Civil Procedure for the District Courts of the United States, 28 U. S.C.A. following section 723c, adopted by the Supreme Court of the United States in 1938 and effective at a date subsequent to the reference in the instant case. Rule 53 provides inter alia that "a reference to a master [includes a referee, an auditor, and an examiner] shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated. * * *"

▮ Since defendant can not urge at this time the impropriety of the trial court's reference, his attack on the Auditor's Report must fall. A statement from Ex parte Peterson, 253 U.S. 300, 310, 40 S.Ct. 543, 546, 64 L.Ed. 919, becomes very pertinent in such a situation: "Nor can the order [of reference] be held unconstitutional, as unduly interfering with the jury's determination of issues of fact, because it directs the auditor to form and express an opinion upon facts and items in dispute. The report will, unless rejected by the court, be admitted at the jury trial as evidence of facts and findings embodied therein; but it will be treated, at most, as prima facie evidence thereof. The parties will remain as free to call, examine, and cross-examine witnesses as if the report had not been made. No incident of the jury trial is modified or taken away either by the preliminary, tentative hearing before the auditor or by the use to which his report may be put. * * * The reasons for holding an auditor's report admissible as evidence are, in one respect, stronger than for giving such effect to the report of an independent tribunal like the Interstate Commerce Commission. The auditor is an officer of the court which appoints him. The proceedings before him are subject to its supervision, and the report may be used only if, and so far as, acceptable to the court."

We are satisfied that neither the hearing before the auditor, nor the introduction of his report in evidence, encroaches in any way on the province of the jury and thereby unduly enlarges the power of the court.

Finding no reversible error the judgment will be affirmed.