## BARNARD–CURTISS CO. v. MAEHL.

### No. 9442.

Circuit Court of Appeals, Ninth Circuit.
Jan. 4, 1941.

Howard Toole and W. T. Boone, both of Missoula, Mont., for appellant.

Russell E. Smith and Kendrick Smith, both of Missoula, Mont., and J. J. McDonald, of Philipsburg, Mont., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

Appellant suffered a judgment against it in an action containing seven causes of action, brought by appellee to recover on contracts, express and implied.

Appellee's first cause of action alleged that on July 22, 1936, appellant, which was about to commence the construction of a certain dam and reservoir, entered into a contract with appellee, under the terms of which appellee agreed to clear off brush and timber on 116 acres of land for the sum of $100 per acre; that appellee commenced the work about August 24, 1936, and completed it on January 17, 1937; and that appellant had failed to pay appellee a balance of $3,439.70 due him under the contract, with 6% interest since January 17, 1937.

For a second cause of action appellee alleged that appellant and appellee entered into a contract by which appellee agreed "to grub out, clear away and remove all stumps, roots and other debris from the surface of a certain gravel bar and tract of land" of about 20 acres, for the sum of $65 per acre; that appellee commenced such work on September 1, 1936, completed it on October 1, 1936, and that there was due him under the contract the amount of $1,300 with 6% interest from October 1, 1936.

For a third cause of action, which was dismissed at the trial, appellee alleged that between August 24, 1936, and January 17, 1937, at the special instance and request of appellant, appellee performed certain work "in cutting, preparing for use and saving for" appellant about 6,000 stulls, the reasonable value of which was $424, and that there was due to appellee that sum with 6% interest from January 17, 1937.

For a fourth cause of action, appellee alleged that between June 29, 1936, and August 21, 1936, at the special instance and request of appellant, appellee performed certain work "in hauling and transporting certain workmen and employees of" appellant, the reasonable value of which was $105.60, and that there was due to appellee that sum with 6% interest from August 21, 1936.

A fifth cause of action alleged that between September 13, 1936, and October 2, 1936, at the special instance and request of appellant, appellee performed certain services "in hauling workmen, material and supplies" for appellant, the reasonable value of which was $64, and that there was

due to appellee that sum with 6% interest from October 2, 1936.

A sixth cause of action alleged that between September 15, 1936, and November 9, 1936, at the special instance and request of appellant, appellee performed certain services for appellant "as Superintendent and Foreman in the building and construction of camp buildings" the reasonable value of which was $507.60, which was $1.20 per hour for 423 hours, and that there was due and owing appellee $148.05 with 6% interest from November 9, 1936.

For a seventh cause of action, appellee alleged that on August 23, 1936, at the special instance and request of appellant, appellee delivered to appellant "certain tools, machines and merchandise" the reasonable value of which was $91.40; that appellant agreed to return such tools, machines and merchandise within a reasonable time or pay to appellee the reasonable value; that a reasonable time had elapsed without such return, and that there was due to appellee the amount of $91.40 with 6% interest from August 26, 1936.

Appellant answered denying pertinent allegations of the complaint, and counterclaimed for $774.45 and $8,942.36. The first counterclaim was dismissed at the trial. In the second counterclaim, appellant alleged that on January 18, 1937, appellant and appellee entered into a written contract, by the terms of which appellee agreed to clear 50 acres of land for $100 per acre; that appellee partially performed the contract, and was $2,079.51 overpaid for such partial performance; that the cost to appellant of completing such contract was $6,862.85, and therefore appellant was damaged in the sum of $8,942.36. For reply to the second counterclaim, appellee admitted execution of the contract mentioned, alleged that he cleared 24 acres, partially cleared an additional 12 acres, had been paid only $4,221.50, and that on March 12, 1937, such contract was rescinded by mutual agreement, and the rights and liabilities of the parties thereunder discharged.

Appellee demanded a jury trial. Appellant moved for leave to serve summons and complaint in this action on one Metcalf, stating that Metcalf was a person who was or might be liable to appellant or to appellee for all or part of the claim of appellee or liable to appellant on its counterclaim against appellee. Annexed to the motion were several documents, including two complaints filed by Metcalf in a state court of Montana against appellant, and an affidavit of Barnard, one of appellant's officers. The first complaint of Metcalf sought to recover for clearing and grubbing land. The second complaint sought to recover for 6,000 stulls, and in a second count for the hire by appellant from Metcalf of certain horses. Barnard's affidavit contained the statement that appellee and Metcalf were claiming for clearing the same land; that they were also claiming for the same stulls; that it could not be determined without joinder of Metcalf what obligations or indebtedness existed between the parties; and that Metcalf might be liable to appellant on the counterclaims and his presence was required to completely determine such counterclaims.

After denial of such motion, appellant moved to refer the cause to a special master for the taking of evidence, supporting the motion by its attorney's affidavit to the effect that trial of the cause would require an accounting. Such motion was denied.

The jury returned a verdict for appellee for $3,368.91 and judgment was entered thereon from which this appeal was taken.

◼ Appellant first contends that the court below erred in denying the motion to serve summons and complaint on Metcalf. Federal Rules of Civil Procedure, Rule 14(a), 28 U.S.C.A. following section 723c provides in part:

"Before the service of his answer a defendant may move ex parte or, after the service of his answer, on notice to the plaintiff, for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him. * * *"

Appellant was not entitled to invoke that rule because there was no showing that Metcalf was or might be liable to appellant or to appellee for all or part of appellee's claim against appellant.

◼ Appellant asserts, however, that Rule 22(1) permitted it to bring Metcalf in the case so that it would not be subject to double liability. Such rule provides in part: "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. * * A defendant exposed to similar liability

may obtain such interpleader by way of cross-claim or counterclaim. * * *"

We are persuaded that, as appellee contends, the question is raised for the first time on appeal. A motion was filed by appellant, yet Rule 22(1) makes no provision for a motion, whereas Rule 14(a) does. The motion uses language similar to that of Rule 14(a). Although there was ample opportunity to do so, appellant did not follow Rule 22(1) "by way of cross-claim or counterclaim". Appellant does not, in its reply brief, dispute appellee's contention that the question was not presented to the court below. We therefore decline to pass on the question.

■ It is contended that there was no substantial evidence to support a verdict on the first cause of action, in that the evidence that a contract was made was not substantial, but if substantial, that it disclosed that the contract was made with appellee and Metcalf, and not the former alone.

It appeared from the evidence that appellant's representatives took Metcalf and appellee to the site of the work and asked them for a price for clearing the land. At that time, appellant wished to submit a bid on the construction of a dam and reservoir, the proposal for which required the clearing work referred to. Metcalf and appellee then agreed to do the work for $100 per acre. Appellant submitted a bid on the proposal but was not awarded the contract. Subsequently bids were again invited. An officer of appellant then asked appellee if he would "stay" with the agreement he had previously made, to which appellee replied that he would do the work for the same price. Appellant was the successful bidder, received the contract and directed appellee to proceed with the clearing. Appellee further testified to the effect that Metcalf was not involved in the contract but was employed by him.

The foregoing evidence was substantial and since it was believed amply supports the verdict. Appellant contends that other evidence negatives the possibility that a contract was entered into. Appellee began to work on the project on August 24, 1936, and signed an "Assignment Slip-Works Program" as a laborer at 60¢ an hour. A few days later he was re-classified and thereafter received 85¢ an hour. Appellee explained the slip by saying that appellant required all men working on the project to sign such a slip. The explana-

tion was believed and does not, therefore, negative the existence of a contract. During all the time the contract was being performed, appellee was carried on appellant's payroll, and appellant points to that fact as showing that appellee was merely an employee. We do not agree because the same fact appears during the time of performance by appellee of a written contract with appellant.

■ It is also urged that appellee could not sue alone because the contract was entered into by appellee and Metcalf, but there was evidence that the contract was made by appellee alone. Since such evidence was believed, the rules as to whether one of two joint contractors, as here, may sue, are not applicable.

■■ With respect to the second cause of action, which covered grubbing, the evidence disclosed an agreement between the parties that appellee should do the grubbing, but no price therefor was fixed. In other words all the elements of the contract were present except the compensation to be paid. The complaint alleged that appellant agreed to pay appellee the sum of $65 per acre for the work. There was evidence that such sum was the reasonable value of the work done. Appellant contends that an express contract was alleged, while the proof was based on quantum meruit, and that therefore there was a fatal variance in the proof.

Where such a situation arises in connection with building and construction contracts, the law implies a promise to pay reasonable compensation. 9 C.J. 701, 818; 17 C.J.S., Contracts, §§ 4, 367, pp. 321, 826. We think such rule to be applicable here, and therefore there was no variance.

■ It is further urged that there was no evidence to support a verdict on the sixth cause of action. Appellee testified that he was directed to do the work he did; that it was reasonably worth $1.20 per hour; and that he was paid only $.85 per hour. Such evidence was sufficient to support a verdict.

■■ With regard to the counterclaim, appellant says there was proof thereof, and none to the contrary, and therefore it was entitled to a verdict thereon. Appellee testified that appellant's superintendent and he mutually agreed to rescind the contract. Appellant says that such evidence was inadmissible because the written contract could be altered only in writing, and that

the substance of the agreement was that the written contract requiring the clearing of 50 acres was altered so as to require the clearing of only 24 acres. It is asserted, therefore, that the evidence referred to was inadmissible because Rev. Codes of Mont., 1935, § 7569 provides that a "contract in writing may be altered by a contract. in writing, or by an executed oral agreement, and not otherwise".

While novel, the argument, we think, cannot prevail. The testimony did not indicate an "alteration" of the written contract, except by rescission. In Montana, rescission of a contract may be had by mutual consent. Rev.Codes of Mont., 1935, § 7565; Kester v. Nelson, 92 Mont. 69, 73, 10 P.2d 379.

Finally, it is contended that the court erred in failing to sustain the motion to refer the case to a referee. While reference is permitted in an action at law under Federal Rules of Civil Procedure Rule 53(b), such a reference shall be made "only when the issues are complicated". Whether a reference in such an action shall be made is largely within the discretion of the trial court. Coyner v. United States, 7 Cir., 103 F.2d 629, 635. We think the pleadings did not disclose issues so complicated that it was an abuse of discretion to fail to make a reference.

Affirmed.