# SPEED *v.* McCARTHY.

ERROR TO THE CIRCUIT COURT OF PENNINGTON COUNTY, SOUTH DAKOTA.

No. 230.   Argued April 10, 11, 1901.—Decided April 29, 1901.

As against the purchaser of interests in mining claims after the location certificates were recorded, the original locators were held by the state court estopped to deny the validity of the locations. The question of estoppel is not a Federal question.

The state court further held that where the annual assessment work had not been done on certain mining claims, a co-tenant could not, on the general principles applicable to co-tenancy, obtain title against his co-tenants by relocating the claims.

This was also not a Federal question in itself, and the contention that the state court necessarily decided the original mining claims to be in existence at the time of the relocation, in contravention of provisions of the Revised Statutes properly interpreted, could not be availed of under section 709, as no right or title given or secured by the act of Congress in this regard was specially set up or claimed.

PATRICK B. McCarthy commenced this action in the Circuit Court of Pennington County, South Dakota, against William

B. Franklin and others, to determine their adverse claims in and to certain mining property. Before the trial William B. Franklin died, and his heirs and his administrator, Edward W. Speed, were substituted.

The Circuit Court filed findings of fact and conclusions of law, and entered judgment for defendants on the facts so found.

The facts found by the trial court are thus stated in the opinion of the Supreme Court:

"On September 16, 1882, Jacob F. Reed and William Franklin located a portion of the ground in controversy as the Reed placer mining claim. From the date of location until 1892, Reed and Franklin were in actual, notorious and peaceable possession of the claim, were acknowledged and reputed to be its owners, and during each year performed the required development work. They applied for patent November 23, 1892. Final entry was made March 13, 1893. There was no application for a lode on the placer site aside from the placer claim. The boundaries of the claim as patented coincide with its boundaries as staked upon the ground at time of location. January 25, 1888, Reed, Franklin, Thomas C. Blair and Frank Eaton marked the boundaries of Tin Bar No. 1 claim upon the ground with stakes, as required by law, posted a discovery or location notice thereon, and within sixty days thereafter recorded a location certificate, but did no other act of location at that time. The location or discovery notice of this claim was posted inside the boundaries of the Reed placer claim, and the point claimed as discovery on the Tin Bar No. 1 is the same point at which the notice was posted. No labor has been performed or improvement made upon the claim, except about four days' work in 1889 and about four days' work in 1891; such work not exceeding $14 in each of those years. There was no agreement on the part of defendants Blair or Franklin with plaintiff to perform labor or make improvements on Tin Bar No. 1 in 1893 or 1894, and no contractual relation existed between them in regard to such claim when the Holy Terror lode claim was located. January 25, 1888, Blair and Eaton did the same acts of location with respect to Tin Bar No. 2 that were done in respect to Tin Bar No. 1. No labor has been performed, or improve-

ment made, upon Tin Bar No. 2, except about four days' work in 1891, of value not exceeding $14. There was no agreement on the part of defendants Franklin or Blair with plaintiff to perform labor or make improvements upon Tin Bar No. 2 in 1892, 1893 or 1894, and there was no contractual relation existing between them in regard to such claim during those years. Defendant Franklin located the lode claims Holy Terror and Keystone No. 4 on June 28, 1894, and September 20, 1894, respectively, and the law has been complied with, so far as it relates to those claims, since the date of each. Defendants are the owners of the Holy Terror and Keystone No. 4, save for the rights of the plaintiff in this action. No adverse claim was filed by plaintiff or other owners of either Tin Bar No. 1 or 2 to the application for patent to the Reed placer claim. At and prior to the time of the application for patent to the placer claim there was no known lode gr vein thereon within the boundaries of either Tin Bar claim or such character as to render the ground more valuable because of its presence, or to justify the expenditure of money for either exploitation or development. There was no application for patent to any lode or vein included in the placer claim in the application for patent to the placer claim. The Holy Terror embraces 1.62 acres of the ground covered by Tin Bar No. 1, and Keystone No. 4 embraces 2.71 acres of the ground covered by Tin Bar No. 2. In 1888, Eaton conveyed an undivided one-fourth interest in Tin Bar No. 1 and Tin Bar No. 2 to one George Williams, who, in the same year, conveyed the same interest to plaintiff and one Michael McGuire. On April 22, 1890, Eaton conveyed an undivided one-fourth interest in Tin Bar No. 2 to defendant Franklin, and Blair conveyed a like interest therein to Jacob F. Reed. When this action was commenced, Franklin since deceased and defendants Blair, Fayel and Amsbury each owned an undivided one-fourth interest in the Holy Terror claim and an undivided seven-thirty-sixths interest in Keystone No. 4. Blair acquired his interest in the Holy Terror claim with full knowledge of whatever rights the plaintiff had, if any. During 1891, Blair and Franklin discovered a well defined ledge of mineral-bearing rock in place, carrying gold, upon Tin Bar No. 2, the point of discov-

ery being outside the limits of Reed placer claim. The location notice on Tin Bar No. 1 was posted upon a well defined ledge of rock carrying tin, but plaintiff and defendants had no knowledge of the existence of tin or other valuable deposits therein until during the trial of this action in the court below."

Plaintiff appealed to the Supreme Court of South Dakota from the judgment and from an order denying a new trial, and the judgment was reversed and a new trial ordered. 11 S. D. 362. Subsequently a rehearing was had, and judgment was directed to be entered below for plaintiff on the findings of fact for one-eighth interest in and to so much of the ground covered by the Holy Terror claim and the Keystone No. 4 claim as was embraced by Tin Bar No. 1 and Tin Bar No. 2. 12 S. D. 7. This was accordingly done by the Circuit Court, and this writ of error was thereupon allowed.

*Mr. George Lines* for plaintiff in error. *Mr. James W. Fowler, Mr. Frederick H. Whitfield, Mr. Charles Quarles* and *Mr. Joseph V. Quarles* were on his brief.

*Mr. W. L. McLaughlin* for defendant in error. *Mr. Charles W. Brown* and *Mr. Daniel McLaughlin* were on his brief.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

It is objected that jurisdiction of this writ of error cannot be maintained because no title or right was specially set up or claimed within section 709 of the Revised Statutes. But plaintiffs in error contend that, while they admit that they made no specific reference to the statutes of the United States, their pleading, nevertheless, showed that they asserted title through valid mining claims duly located, and denied the title of defendant in error on the ground that the locations under which he claimed had become forfeited and abandoned, and that that was a sufficient compliance with the requirements of section 709.

We cannot concede that this is so in view of the rule expounded in *Oxley Stave Co.* v. *Butler County,* 166 U. S. 648, and

many other cases, and are the less disposed to that conclusion, as the case might well be held to have been decided on grounds independent of Federal questions.

Counsel for plaintiffs in error assert in their printed brief that the following questions were presented by the findings of fact:

" First. Whether Tin Bar No. 1 claim, in its entirety, was extinguished and lost to the owners thereof by the patenting of the Reed placer claim.

" Second. Whether the Tin Bar No. 2, claim, to the extent that it conflicted with the Reed placer, was extinguished and lost to the owners thereof by the patenting of the placer claim.

" Third. Whether, notwithstanding the failure of the owners of the Tin Bar claims to perform thereon the work required by section 2324, Rev. Stat., those claims continued to be valid and subsisting claims, and the locators thereof or their grantees co-tenants in respect thereto; so that one of such locators or grantees could not make a new location, for his own benefit solely, and include therein a portion of the ground covered by said Tin Bar claims although, by reason of such failure to work, said claims had become ' open to relocation in the same manner as if no location of the same had ever been made.' "

And they insist that these questions could only have been determined by the application of the provisions of chapter six of Title XXXII of the Revised Statutes correctly interpreted, particularly of section 2324.[1]

---

[1] " Sec. 2324. The miners of each mining district may make regulations not in conflict with the laws of the United States, or with the laws of the State or Territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining claim, subject to the following requirements: The location must be distinctly marked on the ground so that its boundaries can be readily traced. All records of mining claims hereafter made shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim. On each claim located after the tenth day of May, eighteen hundred and seventy-two, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year. On all claims

But the Supreme Court of South Dakota held that plaintiffs in error, defendants below, were not in a position to allege or prove against defendant in error, plaintiff below, that the declarations contained in the recorded location certificates were false.

In its first opinion, after saying that there was "certainly no reason for holding that the owner of an unpatented placer claim cannot locate a lode claim, or consent to such a location being made by others, within the boundaries of his placer claim;" and also that "if the Tin Bar claims were located when application for patent to the placer was made, they were not affected thereby, no application for lodes having been included in the application for the placer patents;" the court proceeded to hold that the conduct of the original locators was such as to induce "persons who might examine the records to believe that they were the owners of properly located mining claims," and that the rights of defendant in error in this action depended "upon the facts which the conduct of the locators induced him to believe existed when his interest in the claims was acquired. It would be a travesty on justice to permit the locators to now impair such rights by asserting that their re-

---

located prior to the tenth day of May, eighteen hundred and seventy-two, ten dollars' worth of labor shall be performed or improvements made by the tenth day of June, eighteen hundred and seventy-four, and each year thereafter, for each one hundred feet in length along the vein until a patent has been issued therefor; but where such claims are held in common, such expenditure may be made upon any one claim; and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location. Upon the failure of any one of several co-owners to contribute his proportion of the expenditures required hereby, the coöwners who have performed the labor or made the improvements may, at the expiration of the year, give such delinquent coöwner personal notice in writing or notice by publication in the newspaper published nearest the claim, for at least once a week for ninety days, and if at the expiration of ninety days after such notice in writing or by publication such delinquent should fail or refuse to contribute his proportion of the expenditure required by this section, his interest in the claim shall become the property of his coöwners who have made the required expenditures."

corded representations were false. Neither of the defendants is in any better position than the original locators, and all are estopped from denying the validity of the Tin Bar locations."

In the opinion on rehearing the court said that the findings of the Circuit Court showed " that Reed, Franklin, Blair and Eaton recorded a location certificate for Tin Bar No. 1, and that Blair and Eaton recorded a location certificate for Tin Bar No. 2, in the office of register of deeds in the proper county, before plaintiff purchased his interest in such claims; that neither defendant is in any better position than the original locators; and, whether or not plaintiff examined and relied upon the records, we think defendants are estopped from denying the validity of these locations."

If, as thus held, defendants below could not deny the validity of these locations, the estoppel covered the objection to the right to locate a lode claim within a placer claim previously located, and the objection based on the supposed effect of the patenting of the placer claim, as raised on this record. And whether a party is estopped or not is not a Federal question. *Gillis* v. *Stinchfield*, 159 U. S. 658; *Pittsburgh Iron Co.* v. *Cleveland Iron Mining Co.*, 178 U. S. 270.

Having determined that for the purposes of this action the Tin Bar claims were to be regarded as valid in their inception, the Supreme Court considered the controversy as to the right of a co-tenant to relocate a mining claim when the annual assessment work has not been done, and obtain title as against his co-tenants.

The court held that the relation of co-tenant existed between McCarthy and Franklin when Franklin located the Holy Terror and Keystone claims; that original locators may resume work at any time before relocation; that Franklin's acts of relocation did not terminate the fiduciary relation between himself and McCarthy, and said : " We think the Circuit Court should have adjudged the defendants to be trustees, and have enforced the trust. This conclusion is not precluded by the language of the Federal statutes. They provide that upon a failure to comply with required conditions as to labor or improvements ' the claim or mine upon which such failure occurred shall be open to re-

location in the same manner as if no location of the same had ever been made.' Rev. Stat. U. S. § 2324. It is contended that, if Congress intended to have the relocator regarded as a trustee under any circumstances, such intention would have been expressed in the statute. The contention is not tenable. The trust results from the fiduciary relation of the parties, and not from the operation of the statute." ·

The state court thus disposed of this branch of the case upon general principles of law, and its decision did not rest on the disposition of a Federal question.

Counsel argue, however, that the court, before reaching the question of co-tenancy, was compelled to hold and did hold that the Tin Bar claims existed at the time of the location of the Holy Terror and Keystone claims, and that in so holding the court necessarily decided against the contention of plaintiffs in error that the Tin Bar claims had absolutely ceased to exist by virtue of the statute properly interpreted.

But was that contention so put forward as to constitute the special assertion of a right given or protected by the act of Congress? The only approach to such an assertion was the statement of plaintiffs in error in their amended answer, that defendant in error intended to set up certain rights under the Tin Bar claims, and that these claims were abandoned and forfeited before the Holy Terror and Keystone claims were located. We think these general allegations fall short of that definite claim of a right or title under a statute of the United States, which section 709 requires. And that, as the record stands, this court would not be justified in holding that the state court denied a right or title specially set up as secured by the statute, when it determined this particular question on the general principles of law recognized as prevailing in South Dakota.

*Writ of error dismissed.*