[Civ. No. 2983. Fourth Dist. Nov. 9, 1942.]

OSCAR HENDRICKSON, Plaintiff and Appellant, v. CALIFORNIA TALC COMPANY (a Corporation) et al., Respondents; O. B. AMAN, Cross-Complainant and Appellant.

468

Best, Best & Gabbert for Appellants.

Kenyon F. Lee and Duckworth, Mussell & King for Respondents.

BARNARD, P. J.—This is an action to determine the interests of various parties in certain mining claims and to quiet their title thereto. On a former appeal, on the judgment roll alone, the judgment was reversed because of inconsistent findings and the cause was remanded for a new trial with respect to the ownership of Co-operation No. 1 mining claim. (*Hendrickson* v. *California Talc Co.*, 35 Cal.App.2d 544 [96 P.2d 175].)

Thereafter the plaintiff and the cross-complainant filed amended pleadings each seeking to have it established that he was the owner of an undivided 1/6th interest in that part of the land which was originally included in the Co-operation No. 1 claim, and to have his title quieted thereto. In amended answers, the defendants alleged that the Co-operation No. 1 claim was located at a time when the land had been withdrawn from entry; that after the land was restored to entry the defendants Oscar L. Hoerner, his wife Mabel E. Hoerner, his brother Harry J. Hoerner and several other

parties had located four mining claims called Company No. 1, No. 2, No. 3 and No. 4, and which included within their borders a large part of the land which had been included within Co-operation No. 1 mining claim; that all of the other locators had, twelve days later, conveyed their interests to the defendants Hoerner; that these three defendants were the owners of these four claims; and that the National Lead Company was entitled to possession of them under an agreement with the Hoerners. The defendant M. M. Stephens claimed a portion of the plaintiff's 1/6th interest in the land included in the Co-operation No. 1 claim, under an agreement with him.

After a retrial of the action the court found in favor of the defendants, finding that the attempted location of the Co-operation No. 1 claim was void since it was made at a time when that land was not open to public entry, and that the parties who had made that location had acquired no right, title or interest in the land thus located. A judgment was entered decreeing that the plaintiff and the cross-complainant take nothing by reason of this action, and quieting title to Company No. 1, Company No. 2, Company No. 3 and Company No. 4 mining claims in the Hoerners, subject to the rights of the National Lead Company under its agreement with them. From this judgment the plaintiff and the cross-complainant have appealed.

 The appellants contend that the evidence does not support the court's findings to the effect that no relation of trust or confidence existed between Oscar L. Hoerner and the colocators of Co-operation No. 1 claim, that neither of the appellants is the owner of any interest in the property included in the Co-operation No. 1 claim, that nothing was done by any of the respondents to deprive, cheat or defraud the appellants, or either of them, of their interests in the Co-operation No. 1 claim, that none of the defendants have repudiated the right or title claimed by the appellants, and that the location of the Company Nos. 1, 2, 3 and 4 claims on December 15, 1931, by Oscar L. Hoerner and his then associates was not a relocation or jumping of the Co-operation No. 1 claim as theretofore attempted to be located.

There is no material conflict in the evidence. On June 7, 1930, appellant Aman and respondents Oscar L. Hoerner, Scott and Farnum were on the Mojave Desert on business connected with another claim which is not here involved. Notic-

ing a white hill to the northwest, they went over, discovered a deposit of Bentonite clay and located the Co-operation No. 1 claim. Desiring to take in 120 acres, they included as colocators the names of appellant Hendrickson and respondent Ratcliffe. They described and marked on the ground a parcel of land some 8500 feet long and 600 feet wide and erected a discovery monument and boundary monuments. A location notice was written out in longhand with the names of all six colocators and carbon copies were placed in tobacco cans and inserted in the monuments. No contention is made that all requirements for making such a location were not met and observed. On the same day, they informed Hendrickson that he had been included as one of the locators of this claim and shortly thereafter Ratcliffe was informed of his inclusion. For many months thereafter these colocators proceeded with plans for the development of this claim, many letters were exchanged between various members of the group with reference thereto, and the court found that all requirements with respect to the performance of work thereon were met and fulfilled.

It appears, however, that the land covered by the Co-operation No. 1 claim was included in a large tract of land which was temporarily withdrawn from public entry pending the fixing of a definite location of the line of an aqueduct to be constructed for the purpose of bringing waters from Boulder Dam into this state, which withdrawal order had been made on June 4, 1930, three days before that claim was located. This land was not restored to public entry until August 6, 1931. The fact that this land had been withdrawn from entry was unknown to any of these parties on June 7, 1930, and was unknown to the appellants until after the land was relocated by certain of the respondents. That fact was learned by Oscar L. Hoerner and by Scott, Ratcliffe and Farnum shortly after the attempted location of Co-operation No. 1 claim, but none of these parties informed their associates Hendrickson or Aman of this fact. In November, 1930, March, 1931, and May, 1931, and before the land had been restored to entry, these four respondents attempted to locate the land now included in Company claims Nos. 1, 2, 3, and 4, including the larger part of the old Co-operation No. 1 claim, without including the appellants as colocators. These attempted locations being invalid, on December 15, 1931, and after the land had been restored to entry, the respondent

Oscar L. Hoerner located Company claims No. 1, No. 2, No. 3 and No. 4, respectively, including as colocators his wife, his brother and five of the other respondents. A few days later, the other five conveyed their interests to the Hoerners and still later the Hoerners entered into an agreement with the California Talc Company, which was thereafter assigned to the National Lead Company. The court found that each of these corporate respondents entered into these agreements with notice that the appellants each claimed an undivided 1/6th interest in and to that part of the land which had been included in the Co-operation No. 1 claim. Hoerner testified that in locating the four company claims on December 15, 1931, he did not intend to exclude these appellants from that portion of the land which was embraced within the Co-operation No. 1 claim; that if they had any right in that claim they should have it yet; that it was up to the court whether or not they had any interest in that part of the land; and that his idea had been that if their claim was good they would have their interest in the Co-operation land, and if their claim was not good he would get the land under his company claims.

The controlling question is whether, under these circumstances, the respondent Oscar L. Hoerner had a right to relocate this land for his own benefit, after it was restored to entry, and whether he thereby secured a valid location as to that part of the land included in the former Co-operation No. 1 claim, free from any equitable claims on the part of the appellants. The gist of the respondents' contention is that the original location being void any of the original locators had a legal right, after the lands were restored to entry, to unite with other locators in making a new and valid location free from any duty or responsibility to the appellants, who were their associates in the original attempted location. In speaking of a similar contention on the former appeal, this court said: "Conceding that the latter contention is true under some circumstances it is, under other circumstances, subject to equitable rules and considerations which may be controlling."

There is no question that the attempted location of this claim on June 7, 1930, was void as between the locators and the government (*Wilbur* v. *United States,* 280 U.S. 306 [50 S.Ct. 103, 74 L.Ed. 445]), and that the same would be void as to third parties who acquired rights in the land. (*Belk* v.

*Meagher,* 104 U.S. 279 [26 L.Ed. 735].) ▮ Even in such cases the general rule is that until a valid entry is made by another a mere occupancy of a mining claim, continued in good faith, may lead to a valid location and only the government can complain of such occupancy. (40 C.J. 777.) Even as against third parties the rights of an occupant were recognized in *Capron* v. *Van Horn,* 201 Cal. 486 [258 P. 77]. In that case the defendant settled upon land at a time when an order withdrawing it from entry was in force. The court there said: ''However, the fact that defendant's entry upon the land was unauthorized would not prevent his occupancy from becoming lawful if, before any right could vest in a third person, the withdrawal order should be revoked and the land again restored to settlement and entry while occupied by the defendant.''

▮ In the instant case, while there was no occupancy in the sense that the locators were living upon the property at all times, there was the form of possession which is usual in mining claims with the usual notices, monuments and activity with reference to the proposed use and development of the property and, as the court found, the law with respect to the doing of the work was complied with regularly through the years. The situation here presented is one where the government is not complaining, where no third party is involved, where one of the original locators discovered that the method by which they were proceeding was defective because the land had been temporarily withdrawn from entry, which fact was unknown to the others, and where this party without informing the others concerning the situation attempted to relocate or, as he says, to ''locate'' the claim for his own benefit.

With respect to the invalidity of mining claims and the rights of colocators, the courts have long recognized that a different situation may prevail as between the colocators themselves and that which governs as between a locator and the government or a third party. In *Speed* v. *McCarthy,* 181 U.S. 269 [21 S.Ct. 613, 45 L.Ed. 855], the court said:

''The court held that the relation of cotenant existed between McCarthy and Franklin when Franklin located the Holy Terror and Keystone claims; that original locators may resume work at any time before relocation; that Franklin's acts of relocation did not terminate the fiduciary relation between himself and McCarthy; and said: 'We think the circuit court should have adjudged the defendants to be trus-

tees, and have enforced the trust. This conclusion is not precluded by the language of the Federal statutes. They provide that upon a failure to comply with required conditions as to labor or improvements "the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made." Rev. Stat. U.S. sec. 2324. It is contended that if Congress intended to have the relocator regarded as a trustee under any circumstances, such intention would have been expressed in the statute. The contention is not tenable. The trust results from the fiduciary relation of the parties, and not from the operation of the statute.' "

The respondents argue that the trustee principle there applied has no application here since in that case the original entry was valid while here it was invalid. No cases are cited where such a distinction is drawn and since the trust arises from the relation of the parties it should no more be defeated by a temporary withdrawal order than by a failure to comply with a statute originally giving a right of entry. In fact, the former situation results from ignorance and inadvertence, while the latter involves a more positive disregard of the law. No good reason appears for drawing such a distinction or applying a different rule in such a case as this. If such a rule applies to a subsequent failure to comply with the law where the original location was valid, the reasons for the rule would seem to apply with even greater force where the locators have associated themselves together for the particular purpose of obtaining title to a particular claim, where they have complied with all of the requirements of law in that regard, where their efforts are ineffective for the time being because of the temporary withdrawal of the land from entry, and where one of the associates discovers the invalidity of the entry and without informing the others proceeds to locate the land for himself when a right of entry is restored. The usual rules that a fiduciary relationship exists between tenants in common and that one cotenant may not gain a present advantage by acting adversely to his fellow tenants should be applied to such a case. If it may be said that, strictly speaking, these parties were not cotenants since a complete right of possession did not exist, similar principles should still be applied. To paraphrase what the court said in *Speed* v. *McCarthy, supra,* "The trust results from the

fiduciary relation of the parties, and not from'' whether or not they may technically be said to be cotenants.

We find nothing in the cases relied upon by the respondents which supports their contention that the fact that this land had been withdrawn from entry is controlling and that all equitable rules and principles are inapplicable because the attempted location was void in law and in fact. There is no distinction in this regard between a mining enterprise and other enterprises for which men associate themselves with an express or implied agreement to work together for their common good and to a desired end. Equitable rules have frequently been applied in controversies over mining claims. *Speed* v. *McCarthy, supra,* is an example of such cases.

█ The general rule is that parties engaged in a common enterprise owe a duty to each other with respect to all matters in connection therewith, that a trust relationship is inherent in such an association for a common purpose, and that one of the parties will not be allowed to deal with the subject-matter of the association for his own advantage. In *Munson* v. *Fishburn,* 183 Cal. 206 [190 P. 808], the court said: ''It is well settled that associates in a common enterprise, under whatever guise, have a duty to each other to make full disclosure of any preference or profit not common to all of the associates.'' █ These general principles are applicable here and the arguments that the Hoerner location in December, 1931, was not a ''relocation'' since there had been no legal location theretofore, that the parties were not cotenants and that some of the elements of a partnership as between these parties were lacking, are beside the point.

These parties entered into a joint enterprise having for its object the obtaining of title to this particular land as a mining claim and the resulting fiduciary relationship between the parties could not thus lightly be ignored. As he admitted, Hoerner, without the knowledge of the others, attempted thereafter to locate the same ground as a mining claim for the benefit of himself and his family. The fact that the original attempted location was invalid, the land not then being open to entry, is not the conclusive or determining fact. When the withdrawal order was vacated and the land was restored to entry no third party acquired any rights and the original locators, having otherwise complied with the law, were free to make a valid location. Having found out the facts which were unknown to the appellants, Hoerner made such a loca-

tion without including the appellants as parties thereto but, in so doing, he was not free to act for himself alone. Since he occupied a fiduciary position the equitable rules apply and his act in relocating the land under such circumstances must be held to have inured to the benefit of the appellants, for whom he was a trustee. The evidence does not sustain the essential finding that there was no trust or fiduciary relationship between Oscar L. Hoerner and these appellants. It follows that the other findings, to the effect that the appellants have no interest in that part of this land which was found to be embraced within the limits of the Co-operation No. 1 claim, as attempted to be located by these associates on June 7, 1930, are without support in the evidence.

The portions of the judgment which affect the appellants are reversed with directions to enter judgment in favor of the plaintiff with respect to a 1/6th interest in that part of this land which was found by the court to be within the limits of the Co-operation No. 1 claim, as attempted to be located on June 7, 1930, with appropriate provisions protecting any rights of M. M. Stephens as to a part of that interest, and in favor of the cross-complainant with respect to a similar 1/6th interest in that part of this land within the limits of the Co-operation No. 1 claim as attempted to be located on June 7, 1930. The appellants to recover their costs on this appeal.

Marks, J., and Griffin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied December 31, 1942.