312 P.2d 557

Lloyd F. WEBSTER and Carl A. Webster,
Plaintiffs and Respondents,

v.

John J. KNOP, Wycotah Oil & Uranium
Co., a Corporation, Defendants,
Douglas J. Davis, Grant Shumway, et al.,
Appellants.

No. 8577.

Supreme Court of Utah.

June 13, 1957.

274

Fowler & Matheson, Salt Lake City, for appellants.

Adams, Peterson & Anderson, Monticello, for respondents.

Reynolds & Gibson, Moab, Ralph J. Hafen, Monticello, for defendants.

McDONOUGH, Chief Justice.

Defendants appeal from a judgment whereby, in a suit to quiet title, plaintiffs were decreed to be the owners of a ⅔ interest in certain mining claims.

On March 23, 1954, John J. Knop, one of the defendants and Lloyd F. Webster and Carl A. Webster, the plaintiffs in this action, entered into a written grubstake agreement whereby plaintiffs agreed to devote 50% of their time in prospecting for uranium or other valuable mineral claims including staking and recording of such; and defendant Knop agreed to furnish them with two vehicles and the necessary supplies not exceeding $250 per month. It was further agreed that each of the parties to the agreement would take a ⅓ undivided interest in any claims staked pursuant to the terms of the contract. The contract by its terms was to be in effect from April 1, 1954, through July, 1954.

On April 15, 1954, pursuant to this agreement, plaintiffs located the Faith Claims, one through ten, in the names of the three parties, and recorded the notice of location on April 24, 1954. Amended notices of location were placed on claims one and two on July 5, 1954, and on claims three through ten on August 10, 1954, all of which named the three parties as locators. These amended notices were all filed of record on August 12, 1954. At the time

the original and amended locations were made, however, the area which the Faith Claims occupied was not open to location, since a valid oil and gas lease existed, which in effect invalidated any subsequent mining locations. As a result, the location and amended locations of the Faith Claims were invalid. This contract, as noted above, expired by its terms on July 31, 1954. Thereafter, on August 14, 1954, John J. Knop relocated the Faith Claims in his own name, using the same description and monuments, and filing the notice of relocation on August 27, 1954. The United States Congress had on August 13, 1954, passed a bill allowing mineral claims in certain cases to be filed over existing oil and gas leases on the public domain. See 30 U.S.C.A. § 521, 68 Stat. 708.

During July of the next year John J. Knop executed and delivered to Douglas J. Davis a quitclaim deed to the Faith Claims. It is under this instrument that defendants, Davis and Shumway, claim. Shortly after its execution plaintiffs filed this action.

Prior to the purchase of the claims in question by the defendants Davis and Shumway, both had notice of the invalid first location, having found the records of notice of location and amended notice in the County Recorder's Office. These were filed under the names of Knop, and the two plaintiffs Webster. The defendants Davis and Shumway also had actual notice of the grubstake agreement under the terms of which the original location was made. Nevertheless though having been apprised of a possibility of a claim of interest in the mining claims they did not seek out the plaintiffs in this action to inquire if they claimed an interest. Rather, they relied on two title opinions by two attorneys to the effect that since the original location was invalid and since the grubstake agreement had lapsed before the relocation, such relocation in the name of John J. Knop was valid and exclusive.

It should be pointed out here that technically this was not a relocation, the original location was void, not voidable. We use the term relocation to express a second location over the top of the first invalid location, using the same description, monuments and claims.

At the pre-trial hearing, the issues were narrowed and most of the above facts were stipulated. The two questions of law here on appeal are the same as argued to the trial court.

The first question may be stated as follows: Does a partner in a grubstake contract under the provisions of which void locations were made, who later validly relocates the same claims in his own name after the grubstake contract has expired, using the same discovery markers and monuments, hold in trust for all the part-

ners by reason of a fiduciary relationship under the expired grubstake agreement?

Defendants argued strongly that a location made after the termination of the grubstake agreement no longer carries with it the incidents of a fiduciary relationship, and hence the interest is valid solely in the one relocating. They cite numerous authorities to support this contention, further contending that since the original location was invalid, the later valid location made after the expiration of the grubstake contract did not inure to the benefit of all of the former partners. The cases cited, however, differ from the present facts. It is not disputed that a partner to a grubstake agreement may locate a previously unlocated claim in his own name for himself after the agreement has been terminated. Hollingsworth v. Tufts, 62 Colo. 256, 162 P. 155; see 3 Lindley, Mines (3d Ed.) § 858; but see also § 406 of the same work. But where as here there was a prior admittedly invalid location made pursuant to the grubstake agreement, the question is whether the fiduciary relationship which existed at the time of the invalid locations made in the names of the three parties survived the expiration of the grubstake agreement.

It is not contended by appellants that had a discovery and location been made on land open to entry at the time plaintiffs did their prospecting pursuant to the agreement, the defendant Knop, could subsequent to the expiration of the agreement locate the claims in his own name and cut off the interest of plaintiffs, merely because some work in technical compliance with the law would have to be done after the date of expiration.

They argue rather that where the original location fails for a mere technical failure to comply with the law such as lack of assessment work, or a failure to erect a monument, the rules relative to a fiduciary duty may arise with respect to subsequent dealings with the property by the colocators; but that this is not true where the location is completely void. This contention is without merit. The case of Hendrickson v. California Talc Company, 55 Cal.App.2d 467, 130 P.2d 806, addresses this argument in a situation strikingly similar to that here confronted. There a location was made in the names of six colocators. However, the land had been temporarily withdrawn from public entry three days before the claim had been made. Subsequently, the area was restored to public entry and five of the original locators plus a wife and brother of one of the locators made a relocation. The excluded one of the original locators brought an action for a ⅙th interest arising by reason of the relationship of trust inuring in the original location. The defendants contended that since the original location was void, any of the original locators had a legal right to unite with other locators and

relocate after the land had been restored to entry free from any duty to plaintiff.

The court reasoned that a different relationship exists between parties to an invalid location than exists between the parties and the government or a third party; although the parties as between themselves were not actual cotenants, they would be similarly treated as fiduciaries so as to place an equitable duty upon each locator to the others not to act for the benefit of himself and against the interest of the others as to this location. The court stated:

Hendrickson v. California Talc Co., 130 P.2d 806, 809:

"The respondents argue that the trustee principle there applied [In the case of Speed v. McCarthy, 181 U.S. 269, 21 S.Ct. 613, 616, 45 L.Ed. 855] has no application here since in that case the original entry was valid while here it was invalid. No cases are cited where such a distinction is drawn and since the trust arises from the relation of the parties it should no more be defeated by a temporary withdrawal order than by a failure to comply with a statute originally giving a right of entry. In fact, the former situation results from ignorance and inadvertence, while the latter involves a more positive disregard of the law. No good reason appears for drawing such a distinction or applying a different rule in such a case as this. If such a rule applies to a subsequent failure to comply with the law where the original location was valid, the reasons for the rule would seem to apply with even greater force where the locators have associated themselves together for the particular purpose of obtaining title to a particular claim, where they have complied with all of the requirements of law in that regard, where their efforts are ineffective for the time being because of the temporary withdrawal of the land from entry, and where one of the associates discovers the invalidity of the entry and without informing the others proceeds to locate the land for himself when a right of entry is restored. The usual rules that a fiduciary relationship exists between tenants in common and that one cotenant may not gain a present advantage by acting adversely to his fellow tenants should be applied to such a case. If it may be said that, strictly speaking, these parties were not cotenants since a complete right of possession did not exist, similar principles should still be applied. To paraphrase what the court said in Speed v. McCarthy, supra, 'The trust results from the fiduciary relation of the parties, and not from' whether or not they may technically be said to be cotenants."

We agree with this reasoning.

A constructive trust arose to protect the interest of the original colocators under the terms of the grubstake agreement where one of the parties after the expiration of the grubstake agreement relocated the claim for his own benefit. In weighing the equities, this court must consider the fact that Knop was the financeer, who did nothing concerning the original location except to put up the money, and that the Websters were the prospectors who used their knowledge to make the original location.

The second question is: Were the subsequent transferees having notice of the grubstake agreement and the original location in the names of the three parties to the agreement bona fide purchasers for value from the one who relocated so as to terminate the equitable constructive trust interest in the beneficiaries?

The equitable interest of a trust in the beneficiaries may be cut off as against a bona fide purchaser for value from the trustee or constructive trustee. He must have had no notice, actual or constructive, and he must pay value. Peterson v. Peterson, 112 Utah 554, 190 P.2d 135. As stated in the Restatement, Restitution, § 12(a), adopted in the Peterson case:

"A person has notice of facts giving rise to a constructive trust not only when he knows them, but also when he should know them; that is when he knows facts which would lead a reasonably intelligent and diligent person to inquire whether there are circumstances which would give rise to a constructive trust, and if such inquiry when pursued with reasonable intelligence and diligence would give him knowledge or reason to know of such circumstances."

When the defendants Davis and Shumway entered into agreements for the purchase of the Faith Claims, they knew of the prior location and the parties named as colocators. This alone should have put them on notice that an inquiry should be made of the original colocators. Even though value was paid, reliance cannot in such a case be made entirely on title opinions. A title opinion cannot be sufficient to satisfy a duty to inquire as to possible equitable interest any more than it can without inquiry as to rights of parties in possession. When this fact is added to the fact that they knew of the existence of a prior grubstake agreement, a duty of diligent inquiry arose. Failure in this duty is failure of an element of good faith.

The trial court was correct in adjudging that plaintiffs are entitled to their undivided ⅔ interest resulting from the imposition of an equitable constructive trust.

Affirmed. Costs to respondents.

CROCKETT, WADE, WORTHEN, and HENRIOD, JJ., concur.