**Karl HORN and Lois Horn, Appellants,**

v.

**Robert B. DANIEL and Le Roy Bacon, Appellees.**

**No. 6951.**

United States Court of Appeals Tenth Circuit.

Dec. 22, 1962.

Rehearing Denied April 1, 1963.

Harley W. Gustin, Salt Lake City, Utah (Therald N. Jensen, Price, Utah, on the brief), for appellees.

Before LEWIS, BREITENSTEIN and SETH, Circuit Judges.

LEWIS, Circuit Judge.

Appellant Karl Horn initiated this action in the United States District Court for the District of Utah to set aside for fraud a deed executed and delivered by him to the appellee Daniel covering a group of unpatented mining claims known as Abe 1 to 32 and located in the Elk Ridge area, San Juan County, Utah. The conveyance from Horn retained in the grantor a two per cent overriding royalty and two per cent of any discovery bonuses paid on the claims. The appellee Bacon is a subsequent grantee from Daniel and admittedly has no right greater than his grantor. The appellant Lois Horn is the wife of Karl Horn, appeared in the trial court only as an involuntary third party defendant, and presents an appellate issue entirely unrelated, and so separately considered, to that of her husband. The trial court found and held that the Horn-Daniel deed was not premised in fraud and that Horn's claim in such regard was barred by the applicable Utah Statute of Limitations, U.C.A. 1953, 78–12–26(3).[1] Our consideration of the judgment requires an understanding of the history of the parties' dealings with each other and with others.

Immediately prior to 1954 both Horn and Daniel were employed by the Southwestern Development Company, a mining company. They were close friends and, when in 1954 the extent of the Utah uranium boom became apparent, the men decided to leave their employment and participate together in the progress of the boom. In June of that year they entered into an agreement, correctly termed by the trial court as a grubstake agreement, whereby Daniel would pay

Harry F. Claussen, Grand Junction, Colo. (Kelley, Imman & Flynn, Denver, Colo., on the brief), for appellants.

[1] "Within three years:

\* \* \* \* \*

"(3) An action for relief on the ground of fraud or mistake; but the cause of action in such case shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

Horn a salary of $350 per month and also furnish certain equipment, Horn would prospect, stake and locate mining claims to be held by the parties as co-tenants, and each would hold a fifty per cent interest in the mining claims so located. The Abe 1 to 32 were located during this period. Some 1500 to 2000 other claims were also staked by Horn during the summer of 1954—the early ones under the names of Horn and Daniel and later ones including one McCormick, whose entrance into the venture permitted an increase in Horn's salary. Both Daniel and Horn held separate claims in the area and trades were made between them on property located jointly so as to vest ownership in one subject to a royalty interest in the other.

In October of that year the prospectors had some discussions with one Harrison contemplating development of certain of the claims in the area under a lease arrangement. It appears that in these negotiations the property was treated as jointly owned, with no member of the group having the power to bind the others. The Abe claims were inspected by Harrison at this time but rejected as not being the most promising among the extensive locations.

The actual process of staking claims for Horn, Daniel and McCormick ceased in November 1954, and the specific contractual relationship between the parties was terminated. In 1955, Horn sold one-fifth of his fifty per cent interest in the Abes for $2,500, which money he retained for his own use. Daniel testified that he had no knowledge of the sale until after its completion, but apparently had no objection to it.

In 1956 or early 1957, Newmont Exploration Limited, a large mining corporation having interests in the Elk Ridge area, indicated an interest in obtaining a lease on the Abe claims. When that company's geologist told Horn that the company would consider a contract he was told by Horn to deal with Daniel and that whatever Daniel did would be all right with him.

On May 20, 1957, Horn deeded to Daniel the Abe claims subject to the reservation of override and discovery bonuses. The consideration was small. At such time Newmont Exploration had submitted to Daniel a proposed lease for the Abe claims the terms of which were potentially advantageous in the event of consummation and actual development and production of ore from the claims. Daniel did not disclose to Horn the existence of the proposed lease. The lease was transmitted to Newmont on May 21, was formalized shortly thereafter with the effective date designated as June 25, and Newmont then rapidly developed the properties into rich producers.

The claim of Horn in the case at bar is premised upon the contention that the relationship of Horn and Daniel required the latter to make full disclosure of all facts affecting the value of the Abe claims before negotiating for Horn's interest. The trial court rejected this contention holding that while a close personal and business relationship existed between the parties from the time they terminated their mutual employment with Southwestern to a time beyond May 20, 1957, no fiduciary relationship existed in regard to the Abe claims after the termination of the original grubstake agreement during which the parties' joint interest in the claims was created. This holding, that the parties were dealing at arms length relative to the May 20 deed, appears to be of doubtful correctness in view of the recent Utah case of Webster v. Knop, 6 Utah 2d 273, 312 P.2d 557. See also Chournos v. Evona Inv. Co., 97 Utah 335, 93 P.2d 450; Ruthrauff v. Silver King Western Min. & Mill. Co., 95 Utah 279, 80 P.2d 338. However the trial judgment is not dependent upon this issue if the claims of Horn are barred by the Utah Statute of Limitations. We believe the trial court correctly determined that such claims are so barred.

■ This action was filed October 17, 1960. On May 20, 1957, the date of the conveyance, Daniel knew of the strong probability that he could lease to

Newmont under favorable terms and Horn did not have this specific knowledge. Neither party knew that Newmont had actually discovered a valuable deposit on Abe 11. Horn did know that he could make no realization from his interest in the Abe claims unless the properties were worked by lease or otherwise; that the assessment work upon the claims had to be done within forty days; that Daniel could only want the Abe claims for the purpose of leasing and could only want Horn's interest in order to obtain a greater interest than could be obtained by a joint leasing; and that Newmont was interested in obtaining a lease. By August 1957 Horn had both been informed by Daniel that Newmont had a lease on the Abe properties and had witnessed the operations of the company on the ground. He examined the drill cores and was told of the high content of the showings. He joined with Daniel in restaking old locations in the proximity of the Abe claims that had been lost by failure to do required assessment work. On October 11 the Newmont lease was recorded and its terms were public property. And nothing occurred after that date which could provoke Horn to question the circumstances surrounding his dealings with Daniel except that production from the mine became increasingly more predictable and profitable. Thus it appears that Horn's present claim of injury in 1957 found its motive in the subsequent years, and conduct previously approved finds taint through the consequence of later values. The evidence supports the trial court's finding that Horn was sufficiently apprised of his cause of action prior to October 17, 1957, and was in possession of all facts which would lead an experienced mining man to conclude that Daniel had negotiated with Newmont. The law does not favor one who withholds a purported interest in a mining enterprise awaiting favorable results, Hunt v. Pick, 10 Cir., 240 F.2d 782, the time of discovery of the existence of fraud is a question of fact, Holland v. Moreton, 10 Utah 2d 390, 353 P.2d 989, and the possession of all information necessary to discover fraud satisfies the requirements of the Utah statute. Larsen v. Utah Loan & Trust Co., 23 Utah 449, 65 P. 208; Taylor v. Moore, 87 Utah 493, 51 P.2d 222.

■■ As we have stated, Horn initiated this action to set aside a deed he had delivered to Daniel. The appellant Mrs. Horn did not join in that conveyance. She was joined in the cause as a third party defendant upon Daniel's assertion that she claimed some interest in the Abe claims adverse to the interests of Daniel. She answered alleging a right to inchoate dower recognized in Utah by statute, U.C.A.1953, 74–4–3, the material portion of which provides:

"One-third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, to which the wife has made no relinquishment of her rights, shall be set apart as her property in fee simple, if she survives him; * * *"

We hold that the trial court erred in forcing Mrs. Horn's appearance in the case. Although the rule permitting third party practice has been liberally construed, United States v. Acord, 10 Cir., 209 F.2d 709, and is interpreted to permit an area of discretion in the trial court, General Electric Co. v. Irvin, 6 Cir., 274 F.2d 175, the limitations of its applicability are express in the rule itself, Rule 14(a), F.R.Civ.P. It permits the defendant to move to bring in "a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." It does not permit the joinder of actions of persons who may have a claim against the defendant independently of the plaintiff's claim, John N. Price & Sons v. Maryland Casualty Co., D.C.N.J., 2 F.R.D. 408; Barnard-Curtiss Co. v. Maehl, 9 Cir., 117 F.2d 7.

The judgment against appellant Karl Horn is affirmed; the judgment against appellant Lois Horn is reversed; no costs are awarded.