**AZALEA MEATS, INC., a South Carolina corporation, Plaintiff,**

v.

**Victor MUSCAT, Robert L. Huffines, and Edward Krock, Defendants.**

**No. 64-578-Civ.**

United States District Court
S. D. Florida.

Nov. 4, 1965.

Hugo L. Black, Jr., of Kelly, Paige, Black & Black, Miami, Fla., for plaintiff.

Stanley Bartel, of Guilmartin & Bartel, Miami, Fla., for defendant Victor Muscat.

William B. Killian, of Scott, McCarthy, Preston & Steel, Miami, Fla., for defendant Robert L. Huffines.

Earl D. Waldin, Jr., of Smathers & Thompson, Miami, Fla., for defendant Edward Krock.

DYER, Chief Judge.

By motions for summary judgment, the defendants, Muscat, Huffines and Krock, assert that the plaintiff's cause of action brought under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b) and Rule 10b–5 thereunder, is barred by the statutes of limitation or by laches.

The thrust of the complaint is that there were material omissions and misleading and untrue statements allegedly made to the plaintiff, then known as Southland Provision Company, to induce it to sell on September 8, 1961, to the defendant Krock, 10,500 shares of stock of Insurance and Industrial Enterprises, Inc.

This suit was filed September 29, 1964. Plaintiff claims that until September, 1964, it was ignorant of two facts: first, the terms of a merger proposed in 1961 wherein I. & I. E. stock was exchanged for stock of Serrick Corporation. Had it been aware that this merger was under consideration in the fall of 1961, plaintiff says it would have demanded a higher price for its I. & I. E. stock. The gist of the plaintiff's claim is that the defendants allegedly misled the plaintiff into selling its shares of I. & I. E. stock at a price of $20.94 in cash per share when, at about the same time, Hayden, Stone & Co., an investment banking firm, had recommended a fair exchange ratio for a merger of I. & I. E. and Serrick on the basis of the value of I. & I. E. stock at between $67.50 and $73.50 per share for such exchange purposes.

Second, plaintiff claims that it did not find out until September, 1964, that defendant Krock's business associates, defendants Huffines and Muscat, subsequently purchased some of the I. & I. E. stock which plaintiff had sold to defendant Krock.

15 U.S.C.A. § 78j(b) has no statute of limitations. There is no dispute, therefore, that under the Rules of Decision Act, 28 U.S.C.A. § 1652, the applicable state statute of limitations governs. Section 95.11 of the Florida Statutes Annotated provides in pertinent part as follows:

"Actions other than those for the recovery of real property can only be commenced as follows:

\*     \*     \*     \*     \*

"(5) within three years.—

"(a) An action upon a liability created by statute, other than a penalty or forfeiture.

\*     \*     \*     \*     \*

"(d) An action for relief on the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

It would seem that either of the two limitation periods could apply.

■ That plaintiff's action is founded upon a liability created by statute and not upon a common law action for fraud and deceit is unquestioned, for if plaintiff intended to pursue the latter the allegations would be insufficient under Florida law, 14 Fla.Jur., Fraud and Deceit § 9; Greenwald, et al. v. Food Fair Stores Corp., 1958, Fla.App., 100 So.2d 200; Goodman v. Strassburg, 1962, Fla.App., 139 So.2d 163; Securities and Exchange Commission v. Gulf Intercontinental Finance Corporation, 1963, D.C. Fla., 223 F.Supp. 987. Under common law fraud principles pertaining in Florida, the alleged nondisclosure by defendants of the terms of the proposed merger is not actionable—affirmative misrepresentations of material facts are required, Hinson v. Drummond, 1929, 98 Fla. 502, 123 So. 913; Watson v. Jones, 1899, 41 Fla. 241, 25 So. 678; Stackpole, et al. v. Hancock, et al., 1898, 40 Fla. 362, 24 So. 914, 45 L.R.A. 814.

■ Furthermore, under Florida law, an affirmative duty to disclose exists only where a fiduciary relationship is involved and knowledge of the material facts is solely within the possession of the fiduciary. Ramel, et al. v. Chasebrook Construction Company, Inc., 1962, Fla.App., 135 So.2d 876. Here the defendants are being sued for acts allegedly done as individuals purchasing stock and no fiduciary relationship is actually involved. Seestedt v. Southern Laundry, Inc., et al., 1942, 149 Fla. 402, 5 So.2d 859. In fact, Griffith (plaintiff's president) conceded that his dealings with defendant Krock were at arm's length.

Assuming arguendo, however, that the alleged facts might also support a common law cause of action, plaintiff's contention that this would make the limitation period for liabilities created by statute inapplicable is untenable. The Court of Appeals for this Circuit in Crummer Company, et al. v. DuPont, et al., 1955, 223 F.2d 238, noted that conspiracies to destroy businesses were actionable at common law prior to passage of the anti-trust laws. Nevertheless, since the plaintiffs chose to bring their action under the anti-trust laws, the Court held that the three-year statute pertaining to liabilities created by statute was the proper period of limitation. The plaintiff's argument that the four-year limitation's statute applicable to common law torts should apply was summarized by the Court as follows (223 F.2d 246):

"\* \* \* Their primary argument is that, though the complaint does state a claim under the Federal Anti-trust Acts, the allegations are substantially the same as those required in a common law action in Florida for fraudulent conspiracy to which the general Four Year Statute would be applicable, and that statute and not the three year statute is applicable here."

The Court rejected this argument, stating (page 246):

"The appellees, with much stronger show of reason and greater support in the authorities, we think, argue that the Florida Three Year Statute applies and, applying bars the anti-trust action \* \* \*.

"We agree that this is so. Read the complaint as one will, nothing can be made out of it except a suit for damages under the Federal Anti-trust Acts and it is mere quibbling we think to claim otherwise.

"We are in no doubt, therefore, that the district judge in his opin-

ion reached the right conclusion and gave the right reason for it in holding that the Florida Three Year Statute is the applicable limitation statute."

Here, to paraphrase the Court's holding in the Crummer case, read the complaint as one will, nothing can be made out of it except a suit for damages under the Securities Exchange Act.

■ Cases cited by the plaintiff in other jurisdictions, brought under § 10 (b), which have applied the statutes of limitation of that particular forum pertaining to fraud actions [1] are of little help since those Courts had to follow the interpretation of the statutes given by the local state courts. But in Florida, irrespective of the rule elsewhere, an action brought under a statute, even though similar to a common law action, is nevertheless governed by the three-year period for actions upon liabilities created by statute.

■ The plaintiff next argues that the doctrine of fraudulent concealment is applicable and the statute is tolled. That such a position is untenable also is settled in this circuit. In Arkansas Natural Gas Co. v. Sartor, et al., 1935, 5 Cir., 78 F.2d 924, the Court said:

"Mere ignorance of one's rights will not toll the statute of limitations. Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry."

This test was reaffirmed in Hickok Producing & Development Co. v. Texas Co., 1942, 5 Cir., 128 F.2d 183, and more recently in Crummer Co. v. DuPont, supra.

■ Plaintiff's claim accrued no later than September 8, 1961, the date that it sent its stock certificates to Krock. It did not file this action until September 29, 1964, more than three years afterwards. Since the three-year statute of limitation for actions on liabilities created by statute applies, and there is no basis for tolling it, plaintiff's claim is barred.

No different result can be reached if the fraud limitation period (which the plaintiff contends is controlling) is applied. The cleavage between the parties comes about by the difference of interpretation put upon the words in the statute, " * * * until the discovery by the aggrieved party * * *." The plaintiff's contention is that time does not commence to run until all of the material facts are actually discovered, while the defendants assert that "discovery" means either actual knowledge or the possession of facts which would have enabled the party to have discovered the alleged fraud if it had exercised reasonable diligence.

■ The word discovery as used in the statute must be determined by an objective, not subjective, standard. It has been uniformly interpreted as meaning knowledge of facts which could have been discovered in the exercise of due diligence. Horn, et al. v. Daniel, et al., 1962, 10 Cir., 315 F.2d 471; H. F. Wilcox Oil & Gas Co. v. Diffie, et al., 1950, 10 Cir., 186 F.2d 683; Fleishhacker, et al. v. Blum, et al., 1940, 9 Cir., 109 F.2d 543; Universal Film Exchanges, Inc. v. Swanson, et al., 1958, D.C.Minn., 165 F.Supp. 95.

In Goldenberg v. Bache and Company, 1959, 5 Cir., 270 F.2d 675, the Court was faced with the question of how to construe "discovery" as used in the statute of limitations pertaining to § 29(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78cc(b), the Act invoked here by the plaintiff. The Court held:

" 'Discovery' within the meaning of the statute, 15 U.S.C.A. § 78cc(b), quoted in footnote 2, supra, is to be determined, we think, according to an objective standard; that is, 'discovery' means either actual knowledge or notice of facts which, in the

1. Trussel, et al. v. United Underwriters, Ltd., et al., 1964, D.C.Colo., 228 F.Supp. 757; Fratt v. Robinson, et al., 1953, 9 Cir., 203 F.2d 627, 37 A.L.R.2d 636; Connelly, et al. v. Balkwill, et al., 1960, 6 Cir., 279 F.2d 685.

exercise of due diligence, would have led to actual knowledge of the violation. The district court did not err in holding that both the appellant and the appellee could, by reasonable diligence, have known of the errors in the account more than one year before the action was brought."

Although plaintiff asserts that the Florida Statute of Limitations does not commence to run until all of the material facts are actually discovered, there is no authority cited for this contention, and plaintiff concedes that it is contrary to this court's decision in Lamper v. Osius, et al., 1941, S.D.Fla., 38 F.Supp. 373. The one Florida state court case, Metcalf, et al. v. Johnson, 1959, Fla.App., 113 So.2d 864, also is contrary to plaintiff's position. That case was a fraud action in which the defense of the statute of limitations was raised. In holding that the statute had not run, the Court specifically found that there "The plaintiff lacked the opportunity of discovering the property until after the death of Claudia Johnson Bolen." In all other jurisdictions which have construed statutes comparable to the Florida Fraud Statute of Limitations, the term "discovery" has been uniformly interpreted to mean not only actual knowledge, but notice of facts which, in the exercise of due diligence, should have led to discovery.

Plaintiff's reliance upon Janigan v. Taylor, 1 Cir., 344 F.2d 781 is misplaced. Janigan states that where fraud is involved, the cause does not arise until discovery, citing Bailey v. Glover, et al., 21 Wall 342, 88 U.S. 342, 22 L.Ed. 636, but that case holds that even in fraud actions the allegedly aggrieved party must use due diligence and cannot toll the statute by ignoring the obvious. Thus, the Court there stated:

"We also think that in suits in equity the decided weight of authority is in favor of the proposition that where the party injured by the fraud remains in ignorance of it without any fault or want of due diligence or care on his part, bar of the statute does not begin to run until the fraud is discovered * *."

Bailey v. Glover was applied in Tobacco and Allied Stocks, Inc., et al. v. Transamerica Corp., 1956, D.C.Del., 143 F.Supp. 323, affirmed 3 Cir., 1957, 244 F.2d 902. There, the so-called Federal Rule was enunciated respecting the time when a fraud action accrues as follows:

"Restated, the federal doctrine means limitation and laches does not begin to run until evidence of fraud is discovered or could have been discovered had reasonable diligence been exercised, for whatever is notice calling for inquiry is notice of everything to which such inquiry might have led."

■ Of course, the question whether a party had sufficient opportunity, so that in the exercise of reasonable diligence he would have discovered the facts forming the basis of his cause of action, may raise issues of fact which would have to be tried by a jury; but where, as here, the relevant facts are based on the admissions of plaintiff's representatives and documents, it is a question of law to be determined by the Court. Holland, et al. v. Pyramid Life Insurance Company of Little Rock, 1952, 5 Cir., 199 F.2d 926 (construing Texas statute of limitations); White, et al. v. Federal Deposit Insurance Corporation, 1941, 4 Cir., 122 F.2d 770, cert. den. 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747 (construing Virginia statute of limitations); Rosenberg v. Hano, et al., 1941, 3 Cir., 121 F.2d 818 (construing limitations provision of Securities Act of 1933); Lamper v. Osius, et al., supra (applying Florida statute of limitations).

Considering the depositions, documents and affidavits filed herein, there can be no question that plaintiff was put on notice as to the facts constituting its alleged cause of action no later than early September, 1961.

■ It is undisputed that Griffith knew of the merger but never took the trouble to find out the terms. Likewise, Pruitt (Griffith's business manager and authorized to represent Griffith's inter-

ests in his companies) was aware not only of the possibility of a merger in August, 1961, and the proposed exchange of I. & I. E. stock for Serrick, but just didn't pay any attention to it.

Plaintiff's president, Griffith, and defendants, Krock, Huffines and Muscat, were associated together in several business ventures, including a substantial investment by each in I. & I. E. In mid-1961, Griffith, for various reasons, determined to sell his interests in I. & I. E. It was an unlisted company and the stock had no known market value. At or about the same time the merger was being considered between I. & I. E. and Serrick, of which the defendants, Krock, Huffines and Muscat, were directors, Hayden, Stone & Co., an investment banking firm, had been retained to give an independent appraisal of the worth of I. & I. E. and Serrick, and to recommend a fair exchange ratio for a merger of the two companies.

On June 30, 1961, Hayden, Stone & Co. submitted its report estimating the value of I. & I. E. stock at between $67.-50 and $73.50 per share for exchange purposes. A copy of this report was received by the plaintiff in the summer of 1961.

During this time the plaintiff's representatives and Krock negotiated for the purchase of the former's I. & I. E. shares, and on September 6, 1961, an agreement was reached for a sale at $20.-94 in cash per I. & I. E. share.

So it was that Griffith either knew or certainly should have known not only of the intention to merge but the precise terms of the merger before his agreement to sell.

It is also undisputed that the purchase by Huffines and Muscat of some of the I. & I. E. stock which defendant Krock bought should have been known to the plaintiff in September, 1961.

In the negotiations leading to the sale, defendant Krock had informed Griffith in mid-August, 1961, of his intention to offer the stock to his partners (Huffines and Muscat). Defendant Krock wrote a letter to Griffith on August 16, 1961, in which he twice referred to the fact that he was intending to offer some of this stock to his partners.

After the agreement to sell stock to defendant Krock on or about September 6, 1961, defendant Krock informed Griffith in his letter to him of September 8, 1961, that he was going to give Huffines an opportunity to buy as much of the stock as Huffines desired. Upon receipt of defendant Krock's letter, Griffith made no attempt to ascertain whether Huffines was purchasing the stock or not, and never thereafter attempted to make a determination as to whether either Huffines or Muscat were to be interested in participating in the sale of the stock to Krock.

Griffith's admission that the subsequent sale of the I. & I. E. stock by defendant Krock to either Huffines or Muscat would have caused him to suspect "a conspiracy" and would have caused him to investigate further is sufficient in and of itself to have started the statute running in early September, 1961.

So it is without dispute that the facts which Griffith claims led him to the discovery of alleged fraud were, or in the exercise of reasonable diligence should have been, known to him before September 29, 1961, because defendant Krock and defendant Huffines put him on notice about them at that time. In a similar situation, the Fifth Circuit has held that "When ground for suspicion exists, neglect to learn what might be known is counted as knowledge." Brite, et al. v. W. J. Howey Co., et al., 1936, 5 Cir., 81 F.2d 840.

The defendants are entitled to prevail on their Motions for Summary Judgment because plaintiff's claim is barred by the statutes of limitation. This being dispositive of the case, there is no necessity to consider or rule upon the defendants' assertion that plaintiff was guilty of inexcusable delay in instituting this action with consequent prejudice result-

ing therefrom, and the plaintiff is therefore barred by laches.

Judgments in accordance with the foregoing to be submitted within ten (10) days.